(May 18, 1893.)

## SABIN v. CURTIS, County Treasurer.
### [32 Pac. 1130.]

Constitutional Law—Statute Construed.—The act creating Bannock county (2d Sess. Laws, p. 170) is not in conflict with the provisions of section 19, article 3 of the constitution.

Power of Legislature—Authority of Governor to Appoint County Officers.—The legislature has power to create new counties, and may authorize the governor to appoint county officers therefor to serve until the election of county officers at the first biennial election held thereafter, and until such officers so elected qualify, as by law required.

Legislative Representation.—Said act does not deprive Bannock county of representation. It remains a part of the Bingham county representative district and a part of the district composed of Bingham, Logan and Alturas counties, and its electors are entitled to vote for the same number of representatives as they were prior to the creation of Bannock county.

Same—Not an Apportionment Law.—The act creating Bannock county is not an apportionment law in any sense, and neither grants nor takes away legislative representation from said county, nor changes the boundaries of any senatorial or representative district.

Senatorial Districts not Changed.—Said act does not segregate the eleventh senatorial district. By the creation of Bannock county the tenth and eleventh senatorial districts are in no wise changed. The electors of Bannock county have the same right in the election of senators in said districts as they had prior to the creation of said county.

Mandamus to compel the treasurer of Bingham county to pay over certain funds claimed by Bannock county. Writ granted. (Syllabus by the court.)

PETITION for writ of mandate by treasurer of Bingham County.

Stewart & Deitrich, for Plaintiff.

It is incumbent on those who assail a statute on the ground of invalidity to make out a clear case of legislative usurpation. (*Baugher v. Nelson,* 9 Gill, 299, 52 Am. Dec. 697; *Santo v. State,* 2 Iowa, .165, 63 Am. Dec. 506; *Olmstead v. Camp,* 33 Conn. 532, 89 Am. Dec. 228.)   An act is not invalid because it abridges the exercise of the privilege of local self-government in a particular in which such privilege is not guaranteed by any provision of the constitution. (*Commonwealth v. Plaisted,* 148 Mass. 375, 12 Am. St. Rep. 566, 19 N. E. 224.) Nor even on the ground that it violates fundamental principles of representative government, unless it comes clearly into conflict with some express constitutional provision, or with one necessarily implied in that instrument. (*People v. Gallagher,* 4 Mich. 244; *People v. Manhaney,* 13 Mich. 500.) The constitution itself must be looked to in determining the validity of the legislative act. (*Sharpless v. Mayor,* 21 Pa. St. 147, 164, 59 Am. Dec. 759, and note.)   Act must violate constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation on our minds. (*Sharpless v. Mayor, supra; People v. Richmond,* 16 Colo. 274, 26 Pac. 929; 3 Am. & Eng. Ency. of Law, 674; *Williamson v. Williamson,* 3 Smedes & M. 715, 41 Am. Dec. 636; *Tate v. Bell,* 4 Yerg. 202, 26 Am. Dec. 221.)   It should be manifestly unconstitutional, a clear necessity, a plain and obvious conflict. (*Lane v. Dorman,* 3 Scam. 238, 36 Am. Dec. 543; *Louisville v. Hyatt,* 2 B. Mon. 177, 36 Am. Dec. 594.)   Case should be free from rational doubt (*State v. Reid,* 1 Ala. 612, 35 Am. Dec. 44); clear and free from doubt (*Cook v. Portland,* 20 Or. 582, 27 Pac. 263; *Richards v. Raymond,* 92 Ill. 612, 34 Am. Rep. 151; *Carpenter v. People,* 8 Colo. 116, 5 Pac. 828; *Clarke v. Irwin,* 5 Nev. 111; *Stocking v. State,* 7 Ind. 325; *State v. Cunningham,* 181 Wis. 440, 51 N. W. 737); beyond a reason-

able doubt. (*Ogden v. Saunders,* 12 Wheat. 270; Cooley's Constitutional Limitations, 216, and cases; Endlich on Interpretation of Statutes, 524.) To doubt is to sustain the act. (*Carpenter v. People, supra.*) We think on close scrutiny the court will find not only that the law is valid, but that the appointment of the officers under the law is also good. "Each county shall be entitled to one representative," may be a self-executing provision. The argument of defendant assumes that this proviso means: "No county shall be left without at least one representative." He says this law violates this provision because it leaves Bannock without one. Now every negative and prohibitory provision in a constitution is self-executing. (Cooley's Constitutional Limitations, 99; *Law v. People,* 87 Ill. 385.) And so, often, are affirmative provisions. (*State v. Weston,* 4 Neb. 216; *People v. Hoge,* 55 Cal. 617; *Willis v. Mabon,* 48 Minn. 140, 31 Am. St. Rep. 626, 50 N. W. 1111; *People v. Bradley,* 60 Ill. 395; *People v. McRoberts,* 62 Ill. 40.) A county carved out of a representative district remains a part of that district until the next apportionment. (*Bay Co. v. Bullock,* 51 Mich. 544, 16 N. W. 897; *Evans v. Dudley,* 1 Ohio St. 437; *State v. Campbell,* 48 Ohio St. 435, 27 N. E. 885; *State v. Van Duyn,* 24 Neb. 586, 39 N. W. 612.)

H. W. Smith, for Defendant.

I do not claim that the legislature depends upon the constitution as a grant of power, and I admit that the constitution is to be regarded as a limitation upon the power of the legislature, nevertheless the constitution has provided that the form of county government shall be uniform and that the officers in each county shall be elected. These provisions, as in fact all provisions of the constitution, are mandatory. (See Cooley's Constitutional Limitations, 5th ed., 88, 98, 180.) The people residing within the proposed county of Bannock were by the constitution, empowered to take part in the choice of four members of the lower house. They have been absolutely deprived by this act of any voice whatever in electing representatives. McCrary on Elections, second edition, section 191, says: "The right to vote for and be represented by county and state officers being a constitutional right, it cannot be impaired

or taken away by legislation; hence, it has been held upon con-
stitutional ground that if an act for the organization of a new
county was so framed that the inhabitants of such new county
could not participate in the election of judges and state senator
the same was unconstitutional and void." (Paine on Elec-
tions, sec. 331; Cooley's Constitutional Limitations, 5th ed.,
side p. 616; *People v. Maynard,* 15 Mich. 463; *Rumsey v.
People,* 19 N. Y. 41.) This court cannot extend by implica-
tion the terms of the act creating Bannock county beyond what
is implied as the logical consequence of the language used.
(See Endlich on Interpretation of Statutes, sec. 422.) Nor
can the court hold that the failure to provide for legisla-
tive representative is an omission which the court may supply.
The rule of strict construction is always adopted in the matter
of supplying omissions in an act of the legislature. At
the most a word or short phrase is all that can be supplied.
(See Endlich on Interpretation of Statutes, sec. 336; Suther-
land on Statutory Construction, sec. 261.) This court held in
*Ballentine v. Willey,* ante, p. 496, 31 Pac. 994, as follows:
"The legislature is prohibited from passing an apportionment
act which does not give substantially just and equal repre-
sentation to the people of each county, based upon either the
voting or entire population, or upon some other fair basis."
This case, so far as Bannock county is concerned, comes
squarely within the rule laid down in *Lanning v. Carpenter,* 20
N. Y. 447, and *Parker v. State,* 133 Ind. 178, 32 N. E. 836, 33
N. E. 119.

SULLIVAN, J.—This is an application made by the plain-
tiff for a writ of mandate to compel the defendant, as treas-
urer of Bingham county, to pay over to the treasurer of Ban-
nock county certain school money which is admitted to be in
the hands of the defendant, as treasurer of Bingham county,
and which, plaintiff claims, has been apportioned to certain
school districts in Bannock county. The defendant denies the
existence of Bannock county. The plaintiff contends that
Bannock county was created by an act of the second legislature
of Idaho, entitled "An act to create and organize the county
of Bannock; to fix the county seat of said county; to provide for

the apportionment of the indebtedness of Bingham county between Bingham county and Bannock county; and to provide for the apportionment of officers in said county, and for transcribing a portion of the records of Bingham county; and for other purposes." (2d Sess. Laws, p. 170.) It is contended that the act creating Bannock county is in conflict with certain provisions of the constitution, and that said county has no legal existence, for that reason. The rules by which we are guided in the determination of this case are well settled. The conflict or repugnancy between the statute and the constitutional provisions must be clear, and so contrary to each other that they cannot be reconciled. Only when the court is clearly satisfied that such conflict exists will they declare the statute unconstitutional. In cases of doubt as to the constitutionality of a statute, the statute is sustained. Courts interfere only in cases of unquestioned violation of the constitution. With these principles to guide us, we will proceed to determine the three points urged by the defendant against the constitutionality of said act.

The first point is that section 4 of said act provides that the governor, by and with the consent of the Senate, shall appoint the officers of said Bannock county. It is contended that said section 4 of said act is special legislation; and in conflict with the following provisions of section 19, article 3, of the constitution, to wit: "The legislature shall not pass local or special laws in any of the following cases, that is to say: . . . . Regulating county business, or the election of county or township officers; . . . . creating offices, or prescribing the powers and duties of officers, in counties, cities, townships, election districts, or school districts, except as in this constitution otherwise provided." The act in question does not regulate county business, nor does it regulate the election of county or township officers, nor create any officers in addition to those prescribed by the constitution, and designated as "county officers," nor does it prescribe the powers and duties of county officers. The constitution does not prohibit the creation of new counties by the legislature. The power of the legislature to create new counties is recognized by sections 3 and 4 of article 18 of the constitution. Section 6, article 18, of the constitution, pro-

vides that the legislature shall, by general and uniform laws, provide for the election, biennially, in each of the several counties of the state, of the county officers to fill the county offices named in said section. The legislature has complied with that provision. (See 1st Sess. Laws, p. 59.) Section 12 of the act creating Bannock county places said county under the general and uniform laws provided for the biennial election of county officers; and, as no biennial election would occur in this state prior to the fall of 1894, the legislature is not prohibited by the constitution from making provision for the appointment of the county officers of said county by the governor, to hold their offices until the first biennial election after the creation of said county. The provisions of said section 6, so far as they apply to the election of county officers under general and uniform laws, do not require the election of the officers of a new county prior to the first biennial election held after the creation of such county. (*State v. Irwin,* 5 Nev. 111.)

The second contention is that said act fails to provide Bannock county with any representation in the lower house of the legislature. Said act is not an apportionment act, and neither grants nor refuses representation to Bannock county. By the provisions of article 19 of the constitution, the state was divided into senatorial and representative districts, and by the provisions of section 4, article 3, of the constitution, the legislature may redistrict the state, and reapportion the legislative representation of the state, whenever it may deem it advisable to do so. The legislature has made no apportionment since that made by the provisions of said article 19 of the constitution. The constitutional apportionment was made on the basis of the votes cast for delegate to Congress at the election next preceding the adoption of the constitution. The basis of representation was the voting population. Electors, alone, are represented. A given number in one county exercises the same political power as a like number in any other. Some departure, however, is made from said basis of representation by the proviso of section 4, article 3, of the constitution, which provides that each county shall have at least one representative, in all future apportionments. But this does not change the

basis of representation from the voting population to the county itself. The voting population was the basis of representation under the constitutional apportionment—not the county, as a county. Article 19 of the constitution fixes the representative districts, and declares the representation· that each district is entitled to until the same is changed as provided by law. The legislature may enact an apportionment law whenever it may deem proper to do so, but until the legislature passes an· apportionment law the constitutional apportionment stands. Under the proviso of section 4, article 3, of the constitution, each county in existence at the date of the enactment of an apportionment law is entitled to one representative, at least. The real contention is that the act creating Bannock county deprives the electors of that county of any voice whatever in electing members to the House of Representatives, and is for that reason unconstitutional. By the constitutional apportionment, Bingham county—the county out of a part of which said Bannock county was created—is given three members of the House of Representatives, and a joint member with Logan and Alturas counties. Thus the electors of Bingham county were empowered to participate in the election of four representatives. The representative district composed of Bingham county included all territory within its boundaries, and the act creating Bannock county out of a part of Bingham county leaves Bannock county still a part of said district. The boundaries of said Bingham county representative district remain as fixed by the constitutional apportionment . until changed by a new apportionment, regardless of the creation of new counties out of a portion of the county composing such district. (*Ohio v. Dudley,* 1 Ohio St. 437; *County of Bay v. Bullock,* 51 Mich. 544, 16 N. W. 896.) The electors of Bannock county have not been deprived of representation. They may participate in the election of four representatives, the same as they did prior to the creation of Bannock county. In support of the last-mentioned contention, McCrary on Elections, 2d ed. sec. 191, Paine on Elections, sec. 331, and Cooley's Constitutional Limitations, 5th ed., side p. 616, are cited. These authorities would be in point if this court took the view

that the act creating Bannock county deprived the electors of the right of voting for representatives, but are not applicable, in our view of this case, above set forth.   The authorities above cited rely for support on the cases of *People v. Maynard,* 15 Mich. 463, and *Lanning v. Carpenter,* 20 N. Y. 447.   The latter case holds as follows: "The legislature cannot form any part of the existing territory of the state into a county, except at a time when it has the power to provide for its taking its place, as an entirety, in the political and judicial divisions of the state, without the aid of any further enactment of a future legislature"—and is not in point.   The tenth section of the act in question declares Bannock county to be a part of the fifth judicial district of the state; and the eleventh section declares said Bannock county to be within, and a part of, the tenth senatorial district of the state.   In *People v. Maynard, supra,* it was held as follows: "An act purporting to organize a new county out of territory detached from an old one, but which contains no organized townships, and makes provisions for none, is inoperative and void, as without such townships there can be no legal elections."   This case is not in point, for the reason that the electors of Bannock county have not been deprived of any rights whatever by reason of said act.   Section 5, article 3, of the constitution, provides, among other things, that, in the formation of senatorial or representative districts, no county shall be divided.   Bannock county, as created, is wholly within the same senatorial and representative districts in which its territory was situated before the creation of Bannock county.   Said act does not divide either of said counties, leaving a part in one senatorial or representative district, and a part thereof in another; hence, is not obnoxious to that provision of the constitution providing that no county shall be divided in the creation of senatorial or representative districts. Said section, however, applies to an apportionment law, and not to an act creating a new county.

The third contention of defendant is that said act segregates the eleventh senatorial district, and is void for that reason.   In our view of the case, said act does not segregate the eleventh senatorial district.   The tenth senatorial district was composed of Bingham county as it existed at the date of the constitu-

tional apportionment. The eleventh district consists of Bing-
ham as it existed at the date of the constitutional apportion-
ment, and Bear Lake and Oneida counties. The act creating
Bannock county declares that it shall remain a part of the
tenth senatorial district. The tenth district, in connection
with Bear Lake and Oneida counties, forms the eleventh sena-
torial district. There is no change in districts by reason of
the act creating Bannock county. As the matter now stands,
Fremont county, a new county created out of the northerly part
of Bingham county, and Bannock county, a new county created
out of the southern portion of said Bingham county, and Bing-
ham county as changed by the creation of said two new
counties, now compose the tenth senatorial district. The three
last-mentioned counties include the exact territory included
within the boundaries of Bingham county at the date of the
formation of the tenth senatorial district under the constitu-
tional apportionment. The same territory now comprises the
tenth senatorial district. No change has been made in said
district since the constitutional apportionment. The eleventh
senatorial district was composed of Bingham county as it ex-
isted at the date of the constitutional apportionment, and Bear
Lake and Oneida counties, and is now composed of Fremont,
Bannock, Bingham, Bear Lake, and Oneida counties. The
boundaries of the tenth and eleventh senatorial districts have
not been changed by the creation of said new counties. Ban-
nock, Fremont, and Bingham counties, composing the tenth
senatorial district, are empowered to elect one senator at the
next biennial or regular election, and may assist in the election
of a joint senator, with Bear Lake and Oneida counties, pro-
vided no new apportionment law is enacted before said election
takes place.

We hold the act creating the county of Bannock to be con-
stitutional and valid. The prayer of the plaintiff is granted,
and the writ will issue as prayed for in the petition, costs in
favor of the plaintiff.

Huston, C. J., and Morgan, J., concur.