(June 19, 1911.)

OTTO GRICE, Appellant, v. CLEARWATER TIMBER CO., Respondent.

[117 Pac. 112.]

CONSTITUTIONAL LAW—STATUTORY CONSTRUCTION—LOCAL OR SPECIAL LAWS—HIGHWAYS — MAINTAINING OF — DAMS AND BOOMS ACROSS NAVIGABLE RIVERS—LEGISLATIVE ACT.

(Syllabus by the court.)

1. The legislature passed a special or local act, which was approved February 15, 1911, entitled "An act relating to dams and booms in the North Fork of the Clearwater river and in the tributaries thereof," etc. (Sess. Laws 1911, p. 343), which act authorized the construction of dams and booms in said river and tributaries thereof, and provided that any such dam or boom shall have connected therewith sluiceways or other fixture, appliance or opening sufficient and so arranged as to permit floating timber in the form of loose logs, boards, planks, lumber, ties, poles, rails, posts, cordwood or beams, but not in rafts, booms or brails, to pass around, through or over such dam or booms without unreasonable delay or hindrance.

2. The legislature is prohibited by the provisions of sec. 19, art. 3, of the state constitution, from passing any local or special laws authorizing the "laying out, opening, altering, maintaining, working on or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state."

3. The word "highway" is defined by sec. 850, Rev. Stats. 1887, as follows: "Highways are roads, streets or alleys, and bridges, laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the public."

4. The framers of the constitution evidently used the word "highway" in its ordinary and popular sense, and as defined by

said section of the statute, which was in force at the time of the adoption of the constitution.

5. While the word "highway" in its broadest sense would include navigable rivers and lakes, the framers of the constitution did not use the term in any such broad and extensive sense. That word in its ordinary and popular sense refers to ordinary roads and highways which are under the care of local authorities, and the term as there used has reference to highways opening through the country upon lands for the travel of the public generally.

6. In construing the provisions of the constitution, they should be construed in such a way as to give the constitution practical effect according to the intention of the body that framed it and the people who adopted it.

7. When a statute can be reasonably construed and applied in a manner to avoid conflict with the constitution, such construction will be adopted by the courts.

8. In cases of doubt as to the constitutionality of the statute, the statute must be sustained.

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Action for an injunction to restrain the defendant from erecting a dam in the North Fork of the Clearwater river, and to have declared unconstitutional a certain act of the legislature.   Judgment for defendant.   *Affirmed.*

Fred E. Butler, for Appellant.

The North Fork of the Clearwater river is, and from time immemorial has been, a navigable river and a public highway. (3 Kent's Com., 3d ed., p. 432; *Johnson v. Johnson,* 14 Ida. 583, 95 Pac. 499, 24 L. R. A., N. S., 1240; *Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97; *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92.)

When the plaintiff purchased his land, there was no law which would prohibit floating rafts to market over the North Fork of the Clearwater river, and the right to use the easement over such highway became vested in plaintiff, and he cannot be deprived of such property without just compensation. (*Lockwood v. Freeman,* 15 Ida. 395, 98 Pac. 295; 8 Cyc. 906;

*Lewis v. Portland,* 25 Or. 133, 42 Am. St. 772, 35 Pac. 256, 22 L. R. A. 736.)

D. C. McDougall, Attorney General, O. M. Van Duyn, and J. H. Peterson, Assistants, for State, as *Amici Curiae.*

The laws of 1887 define a highway. We do not believe, reasoning from the phraseology used in said definition, the legislature had in mind at the time of the passage of this law and definition any idea that navigable streams were highways. This for the reason that ordinarily most men do not look upon navigable streams as highways, according to their custom of viewing highways. Highways suggest to most people a road upon land for the use of men, animals and vehicles. Furthermore, the words, "laid out or erected," as used in said definition are qualified words, applied to each of the nouns in said sentence, and imply laid out and erected by human agencies. Navigable streams, on the contrary, determine in most cases exactly the reverse of human agencies. Furthermore, the words, "roads, streets, alleys or bridges," as mentioned in said definition, seem to be exclusive of any other highway, and seem to confirm and limit the word "highway" to these particular ones. Had the legislature meant that navigable streams were to be considered as highways, it is reasonable to suppose that they would have included the same in the definition of "highways."

Even in legal contemplation, we find the courts and legal writers limiting the use of the word "highway" as found in statutes and constitutions. (1 Elliott, Roads and Streets, 3d ed., c. 1, sec. 1; *In re Burns,* 155 N. Y. 23, 49 N. E. 246; *De Camp v. Dix,* 159 N. Y. 436, 54 N. E. 63; *Faust v. City of Cleveland,* 121 Fed. 810, 58 C. C. A. 194; *Manigault v. Springs,* 199 U. S. 473, 486, 26 Sup. Ct. 127, 50 L. ed. 274.)

James E. Babb, for Respondent.

Sec. 19 of art. 3 of the constitution is not applicable to the act in question. (*Manigault v. Springs,* 199 U. S. 473, 486,

26 Sup. Ct. 127, 50 L. ed. 274; *In re Burns,* 155 N. Y. 23, 49 N. E. 246; *De Camp v. Dix,* 159 N. Y. 436, 54 N. E. 63.)

The word "highway" was thus defined in the statutes of Idaho in force at the time of the adoption of the constitution, this provision having stood since the revision of 1887 at least:

"Highways are roads, streets or alleys, and bridges, laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the . public." (Sec. 874, Rev. Codes.)

In a number of authorities cited in "Words and Phrases," under the title "Highways," the term "highways" has been held to comprehend a navigable stream or a waterway, but so far as we are able to judge from the reference to the cases contained in that work, none of them go so far as would be necessary to cover the Idaho situation. On the other hand, the precise question has been squarely decided in favor of the validity of such a statute by the court of appeals of New York in at least two cases. The first of these is *In re Burns, supra.* (*Faust v. City of Cleveland,* 121 Fed. 810, 58 C. C. A. 194; *In re Woolsey,* 95 N. Y. 135; *Sears v. Steel,* 55 Or. 544, 107 Pac. 3; *Simon v. Northup,* 27 Or. 487, 40 Pac. 560, 30 L. R. A. 171.)

A careful examination of the Idaho statutes shows how the term "highway" has been used in Idaho, and that waterways are not included under the statutory classification and definition of highways.

SULLIVAN, J.—This action was brought by the plaintiff, as owner of timber land adjacent to the North Fork of the Clearwater river in Nez Perce county, on behalf of himself and all other timber owners similarly situated, to restrain the defendant from erecting and constructing a dam in the North Fork of Clearwater river, without providing a sluiceway in such dam for the floating of rafts.

The complaint is quite lengthy and sets out in detail many facts, showing, among other things, that the Clearwater river flows through a rough, mountainous country; that there are four or five hundred thousand acres of land bordering on such

river and its tributaries which are covered with a heavy growth of merchantable timber; that said river from time immemorial has been for forty miles above its mouth an open and navigable river for floating logs and driving rafts for more than six months out of each year, and that if said dam is constructed, it will prevent the floating of timber in the form of rafts down said river, as the plan for the construction of said dam provides for a sluiceway only ten feet wide, through which to float loose logs and other timber products.

To said complaint a general demurrer was interposed, which demurrer was sustained by the court and judgment of dismissal was entered. This appeal is from the judgment. Two errors are assigned; one to the effect that the court erred in sustaining the demurrer to the complaint, and the other that the court erred in dismissing the action and entering judgment for the defendant.

The legislature passed an act authorizing the construction of dams in the North Fork of said river, providing for sluiceways of sufficient width to permit the floating of timber in the form of loose logs, boards, etc., but not in the form of rafts, booms or brails. (Sess. Laws 1911, p. 343.) The constitutionality of said act is put in issue, and the real question is whether said act is prohibited by the provisions of sec. 19, art. 3, of the state constitution, which is as follows:

"The legislature shall not pass local or special laws in any of the following enumerated cases: . . . . Authorizing the laying out, opening, altering, maintaining, working on, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state."

It is contended by counsel for appellant that the North Fork of Clearwater river is, and from time immemorial has been, a navigable stream and a public highway; and cites Kent's Com., 3d ed., vol. 3, p. 432, and Bouvier's Law Dictionary, under the term or word "highway"; also *Johnson v. Johnson,* 14 Ida. 583, 95 Pac. 499, 24 L. R. A., N. S., 1240, as holding that the rivers and streams of this state which are capable of being used for the purpose of floating logs are public highways.

It is admitted that long prior to the adoption of our con-
stitution the North Fork of Clearwater river had been used
for floating rafts of timber, but it is contended by counsel for
respondent that the term "highway" as used in said section
of our constitution was not intended to apply to navigable
streams.    The word "highway" is defined by sec. 850, Rev.
Stats. 1887 (sec. 874, Rev. Codes), which was in force long
before the adoption of the state constitution.    Said section
is as follows:

"Highways are roads, streets or alleys, and bridges, laid
out or erected by the public, or if laid out or erected by others,
dedicated or abandoned to the public."

It is contended by counsel for appellant that said provision
of the constitution does not, and was not, intended to include
the floatable or navigable streams of the state.    The framers
of our constitution evidently used the word "highway" in its
ordinary and popular sense and as defined by the laws of our
state in force at the time of the adoption of the constitution.
The term "highway" has been held to comprehend a navi-
gable stream or waterway as well as railroads, tramways,
bridges, ferries and canals; in short, every public thorough-
fare is a highway.    (1 Elliott on Roads and Streets, sec. 1.)

The precise question here presented was presented to the
court of appeals in the state of New York in *In re Burns,* 155
N. Y. 23, 49 N. E. 246.    The language of the New York con-
stitution is almost identical with the language above quoted
from the constitution of Idaho, the only difference being that
the prohibition in the New York constitution applies only to
roads, highways or alleys, whereas in the Idaho constitution
it applies to roads, highways, streets, alleys, town plats, parks,
cemeteries, or any public grounds not owned by the state.    In
the Burns case the legislature of New York had declared
"Roaring Brook," which was a non-navigable stream, to be a
public "highway," and had provided for proceeding to render
it navigable for logs.    The court in that case held that in a
certain sense streams and waterways are highways; that the
sea is said to be a great public highway of nature; that canals

and all public rivers and the Great Lakes are highways; that the railroads are highways, and says:

"But surely the framers of the constitution did not use the term in any such broad and extensive sense. Manifestly it is there used in a much more limited sense. The term, in its ordinary and popular sense, refers to the country roads under the management and control of the local authorities of the several towns or counties of the state. . . . . The framers of the constitution evidently used the term in its ordinary and popular sense, comprehending only the ordinary roads and highways under the care of local authorities."

It is declared by said provision of the constitution that the legislature shall not pass local or special laws "authorizing the laying out, opening, altering, maintaining, working on, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state." The word "highways" is used in said section of the constitution with the words "roads, streets, alleys, town plats, parks and cemeteries," and it is clear that such a thing as a public waterway was not in the minds of the framers of the constitution. The "laying out, opening, altering, maintaining, working on or vacating" would hardly apply to a water highway, as water highways are natural waterways, and it would not be reasonable to suppose that the framers of the constitution intended to apply the terms "laying out, opening, altering, maintaining, working on or vacating" to a navigable river or a water highway. And the closing words of said quoted section would indicate that the above conclusion is correct, for the words there used are, "or any public grounds not owned by the state." That refers to grounds, not water highways. Those provisions have reference to the highways or roads opening throughout the country upon land for the travel of persons with their animals and vehicles. To my mind, the provisions of that section were intended to and only apply to highways as defined by said section of the statute, and do not include the navigable streams of the state. The constitution should receive a reasonable construction, and should be interpreted in such a way as to give it practical

effect according to the intention of the body that framed it and the people who adopted it.

In cases like the one at bar, we have well-established rules in regard to the construction of statutes when their constitutionality is questioned.   One is that the presumptions are all in favor of the constitutionality of a statute.   Judge Cooley, in his work on Constitutional Limitations, 7th ed., p. 255, quoting from *Newland v. Marsh,* 19 Ill. 376, states the rule as follows: ''Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction will be adopted by the courts,'' and it is held by many courts that where there is room for two constructions of a statute, both equally obvious and equally reasonable, the court must, in deference to the legislature of the state, assume that it did not overlook the provisions of the constitution and designed the act to take effect.   In this case it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the constitution.   (See *De Camp v. Dix,* 159 N. Y. 436, 54 N. E. 63, and authorities there cited.)

This court held in *Sabin v. Curtis,* 3 Ida. 662, 32 Pac. 1130, that the conflict or repugnancy between the statute and the constitution must be clear, and the statutory and constitutional provisions must be so contrary to each other that they cannot be reconciled, and only when the court is clearly satisfied that such conflict exists will they declare the statute unconstitutional.   In cases of doubt as to the constitutionality of a statute, the statute must be sustained.

In *Doan v. Board of Commrs.,* 3 Ida. 38, 26 Pac. 167, this court held that it is the duty of the court to give both the statute and the constitution such construction as will give effect to both, unless the statute is so clearly repugnant to the constitution as to admit of no other reasonable construction.

To adopt the construction contended for by appellant would, it seems, require a forced construction of the provisions of said section of the constitution, as the language there

used, if taken in its popular and ordinary meaning, does not include water highways. Under the provisions of our statute, the county commissioners have general charge and supervision over the highways of their counties. (Sec. 882, Rev. Codes.) They have authority to appoint road overseers and under sec. 885, a road overseer, under the direction and supervision and pursuant to orders of the board of commissioners, must, "1. Take charge of the public highways within their respective districts; 2. Keep them clear from obstructions and in good repair." Would it be contended for a moment under that section if a navigable stream was flowing through a road district that it would be the duty of the road overseers or county commissioners to see that said navigable river was kept in proper repair and free from all obstructions? We think not, regardless of the fact that subdivision 2 above quoted commands the road overseers to keep all public highways within their district "clear from obstructions and in good repair."

In the case of *Faust v. City of Cleveland*, 121 Fed. 810, 58 C. C. A. 194, the plaintiff was the owner of a steam tug which came into collision with a snag or other submerged obstruction in the river Cuyahoga, lying within the corporate limits of the city of Cleveland, and was sunk and totally lost as a consequence. It is averred that the municipality was under a duty to keep the harbor or river within its limits free from such obstructions, and that it had for a long time prior to the loss of said vessel exercised control and supervision over the river where the disaster complained of occurred, and that the municipality had notice of this particular obstruction and time to remove it before the collision. The argument for the plaintiff was that the river within the limits of the city was a "highway" within the meaning of sec. 2640, Rev. Stats. of Ohio, 1892, defining the duties of Ohio municipalities. Said section is as follows:

"The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall

cause the same to be kept open and in repair and free from nuisance."

The court held that said river was a "highway," used for the passage of vessels engaged in foreign and interstate commerce as well as domestic traffic, but held that it was not such a highway as would come within the provisions of said section. The court said:

"The word 'highway' is a very broad term, and may, as a generic word, include every possible thoroughfare. Thus, as noticed by the court below, a railroad is a highway; and, if the word as used in this Ohio statute is to be regarded as used in its broadest sense, the railroads within the city would likewise fall within the care of the city—a result quite absurd, as all must confess," and held that the city was not liable.

In the case of *Manigault v. Springs,* 199 U. S. 473, 26 Sup. Ct. 127, 50 L. ed. 274, the supreme court of the United States had under consideration a special act of the legislature of South Carolina authorizing the construction of a dam across a particular stream, and this was claimed to be in violation of a provision of the constitution of that state prohibiting special legislation. Said provision prohibited special and local laws on the subjects mentioned therein, one of which is in the following terms: "To lay out, open, alter or work roads or highways." It was there held that the word "highway" must be used in the ordinary sense of a public road, and that the prohibition did not apply to waterways. The court there holds, in effect, that although a river may for the purpose of transit and travel be a highway, in the prohibition contained in the constitution of South Carolina 'against special legislation in regard to highways, that word is used in its ordinary sense, and the prohibition is inapplicable to water highways. In the opinion the court said:

"It is also assigned as error that the act of 1903 is obnoxious to the following provisions of the constitution of South Carolina, . . . . that 'the general assembly of the state shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: . . . . II. To lay out, open, alter or work roads or highways.' . . . .

Admitting that, for the purposes of transit and travel a river may be considered a highway, . . . . we think that, in connection with the words 'to lay out, open, alter or work roads,' the word 'highway' is used in its ordinary sense, and as an equivalent to a public road. The power given by this section is evidently inapplicable to water highways, which are neither laid out, opened, altered or worked in the ordinary sense of these words.''

Counsel for respondent and the attorney general have filed very exhaustive briefs upon the question under consideration, but in our view of the matter it is not necessary in this opinion to further review any of the decisions cited by counsel, as we conclude that said act of the legislature authorizing the placing of dams in said North Fork of the Clearwater river is not repugnant to said provisions of the state constitution, and that the court did not err in sustaining said demurrer and entering a judgment of dismissal. Costs are awarded to respondent.

Ailshie, Presiding J., concurs.   .