(December 23, 1911.)

## HARRY S. KESSLER, Plaintiff, v. HARRY K. FRITCHMAN, Mayor of Boise City, Idaho, Defendant.

[119 Pac. 692.]

CITIES—CHANGING FORM OF GOVERNMENT—GENERAL ELECTIONS—CONSTITUTION—CONSTRUCTION—SPECIAL ELECTIONS—TITLE OF ACT—CLASSIFICATION OF CITIES.

(Syllabus by the court.)

1. Secs. 1 and 2 of the act of March 13, 1911 (Sess. Laws 1911, p. 280), are not in conflict with sec. 1, art. 12, of the constitution of this state.

2. The words "general election" as generally used in constitutions and statutes have reference to general elections held for the purpose of electing state and county officers.

3. The words "general election" as used in sec. 1 of art. 12 of the constitution mean that the general election should be a general election for the purpose of changing the form of government, at which the people having the general qualifications of electors to vote should have a free and open opportunity of expressing themselves upon the questions submitted, and that such qualification should not be limited to any special qualification, and does not mean that such election shall be at the time of a general election under either the general election laws of the state or the municipality holding such election.

4. Special charters issued to cities by the territorial legislature prior to the adoption of the constitution of this state can only be amended by special acts of the legislature, and the general laws relating to purely municipal affairs of local concern to the government of cities do not apply to those cities operating under special charters without the consent of the electors of such municipality.

5. Sec. 1, art. 12 of the constitution reserves the right to the people of a city organized under special charter issued prior to the adoption of the constitution to change the form of government by vote of a majority of the electors at an election held for such purpose.

6. The act of March 13, 1911, is a general law of the state, but it in no way changes or alters or amends the powers of cities previously organized either under a special charter or the general

laws, unless such law is adopted by the electors of such cities and approved as the form of government for such cities.

7. Under the provisions of sec. 3 of the act of March 13, 1911, whenever a change of form of government is made from that under a special charter or from an organization under the general laws to the new form of government provided by said act, the provisions of the act are made to apply alike to all such cities making such change, under the classification made by the act.

8. The title of the act of March 13, 1911, "Providing a form of government for cities of the state of Idaho now or hereafter having a population of two thousand five hundred or over; providing that any such city may become organized under the provisions of this act through the adoption thereof by special election, and providing the procedure therefor; providing for the holding of general and special municipal elections; prescribing the powers and duties of officials under this act; providing for the recall of elective officials; providing for the initiation of legislation by the people and for the submission of measures and ordinances to a vote of the electors of cities adopting the provisions of this act, and prescribing the procedure therefor; providing for granting of franchises and making of contracts and providing other powers, functions, rights and privileges usually exercised by cities of like character and degree; providing a method whereby any city adopting the provisions of this act may discontinue the same after a certain time; providing that nothing in this act shall be construed as repealing or modifying any existing general laws governing such cities unless such general laws are inconsistent with the provisions of this act, . . . . " is sufficient, and states the general subject to be treated by the act, to wit, a form of government for cities, and thereafter specifies the particular measures and methods embraced within the same, carrying out the general purpose and objects of the act. There is nothing in the statute which could in any way mislead the legislature in passing the same or which could mislead the people as to the intent and purpose of the legislature in enacting such law, and it does not violate sec. 3, art. 16 of the constitution.

9. The act of March 13, 1911, is not special or class legislation and is not in violation of sec. 19, art. 3 of the constitution, but by its provisions classifies the cities of the state as clearly authorized under the provisions of sec. 1, art. 12 of the constitution, and this section in no way limits the power of the legislature in enacting a general law providing for the organization of cities under a commission form of government, and that such form of government may be adopted by the cities of the state having a population of two thousand five hundred or more by a majority vote at an election held for that purpose.

10. *Held*, by Stewart, C. J., under the classification of cities made by the act of March 13, 1911, the legislature intended to make a classification according to population, and that all cities, towns or villages having a population of two thousand five hundred or more might be organized under the new form of government, while cities, towns or villages having less than two thousand five hundred population should remain as cities, towns or villages under the general laws under which they were organized, or special charters, as the case might be, until such time as they became organized under said act.

(AILSHIE, J., reserves his opinion on this paragraph.)

(SULLIVAN, J., dissents.)

An original application for writ of mandate. Writ ordered to issue.

Charles F. Reddoch, John F. Nugent, and Gustave Kroeger, for Plaintiff, and Harry S. Kessler, *pro se.*

The word "election" has two distinct meanings. The Standard Dictionary states them as follows:

"Election—1. The act or proceeding of selecting a person or persons for office or employment, especially by voting by ballot or otherwise.

"2. A popular vote on a question of public policy or interest, as a local option election."

See, also, Webster's Dictionary; Black's Law Dictionary; 10 Am. & Eng. Ency. of Law, 562; 15 Cyc. 258.

It is self-evident that the word as used in sec. 1, art. 12, of the constitution, refers to voting on the public question involved, as distinguished from the election of officers. It means a popular vote to determine the form of city government, and has nothing whatever to do with the election of any officers either for the city, precinct, county, state or nation. The word "general" must be construed in connection with the particular meaning given the word "election." (See Standard Dictionary; Black's Law Dictionary; Webster's Dictionary; 14 Am. & Eng. Ency. of Law, 948.)

The framers of our constitution meant the question should be open or available to all of the electors, as distinguished from any special class, such as taxpayers, or from any other

arbitrary division of the voters, rather than that the time of the election should be fixed at the biennial November election. (*State v. Tausick* (Wash.), 116 Pac. 651; *State v. Steunenberg,* 5 Ida. 1, 45 Pac. 462; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234; *Boise City Nat. Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93.)

Sec. 1, art. 12, of our constitution was probably copied from the constitution of California as it then existed, and it is almost identical with a section of the Washington constitution. (*Ruggles v. Board of Trustees,* 88 Cal. 430, 26 Pac. 520; *People v. Town of Berkeley,* 102 Cal. 298, 36 Pac. 591, 23 L. R. A. 838.)

The courts will not declare an act of the legislature void and inoperative unless it appears unconstitutional beyond all reasonable doubt, and where two meanings can be given to a word or phrase, that meaning will be given which will give effect to the legislative intent. (*Wooley v. Watkins,* 2 Ida. 590 (555), 22 Pac. 102; *Ogden v. Saunders,* 12 Wheat. (U. S.) 213, 6 L. ed. 606; *Doan v. Board of Commrs.,* 2 Ida. 781, 3 Ida. 38, 26 Pac. 167; *Sabin v. Curtis,* 3 Ida. 662, 32 Pac. 1130; *Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71.)

Special charters are not specifically mentioned in the title, but the language there used must necessarily and does include special charter cities. (*State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.)

P. E. Cavaney, City Attorney, and Alfred A. Fraser, for Defendant.

At the time of the adoption of the constitution the election known as the ''general election'' was defined in secs. 465, 466, Rev. Stats., said sections being set forth in the opinion of this court in the case of *Doan v. Board of Commissioners,* 2 Ida. 781, 3 Ida. 38, 26 Pac. 167, in which the court has defined the term ''general election'' as the same is used in the constitution. (*Westinghausen v. People,* 44 Mich. 265, 6 N. W. 641; *State v. Tausick* (Wash.), 116 Pac. 651.)

The term "general election," when used in statutes, refers to the election required to be held on the Tuesday succeeding the first Monday of November in each year. (*State v. Cobb,* 2 Kan. 32; *Bond v. White,* 8 Kan. 333; *McIntyre v. Iliff,* 64 Kan. 747, 68 Pac. 633.)

When a constitution commands how a right may be exercised it prohibits the exercise of that right in some other way. (Cooley Const. Lim. 64; *Town of Williamsport v. Kent,* 14 Ind. 306; *Evansville v. State,* 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93; *Page v. Allen,* 58 Pa. 338, 98 Am. Dec. 272.)

The special charter of Boise City cannot be amended by a general law. (*Boise City Nat. Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93; *Wiggin v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286; *Mix v. Board of Commrs.,* 18 Ida. 695, 112 Pac. 215.)

The act in question, so far as it proposes to affect cities organized and existing under special charters, is in conflict with sec. 16 of art. 3 of the constitution. (*Wood v. Election Commrs.,* 58 Cal. 565; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *Katz v. Herrick,* 12 Ida. 21, 86 Pac. 873.)

Sec. 15 of the act, wherein it attempts to fix the salaries of the mayor and councilmen of the cities of this state, is void and unconstitutional, being prohibited by implication. (*City of Lexington v. Thompson,* 113 Ky. 540, 101 Am. St. 361, 68 S. W. 477, 57 L. R. A. 775, and cases cited.)

E. G. Davis, *Amicus Curiae.*

The said act is unconstitutional because it is in violation of sec. 1, art. 12 of the constitution, in that it is a law providing for the organization and classification of cities within the state, but is not a general law providing for such organization and classification in proportion to the population as required by said section.

A law to be general must be uniform in its application to all persons or subjects within the class to which it applies. (*Robinson v. Southern Pac. Co.,* 105 Cal. 526, 38 Pac. 94, 722,

28 L. R. A. 773; *Davis Coal Co. v. Polland,* 158 Ind. 607, 92 Am. St. 319, 62 N. E. 492; *Nichols v. Walter,* 37 Minn. 264, 33 N. W. 800.)

The word "city" as used in sec. 7 of the act undoubtedly means a city as distinguished from a town or village.

If there should now or hereafter be any town in this state having a population of more than 2,500 persons, it would not be able to adopt a commission form of government under the act in question, though fully competent in every other respect, merely because it is not a city.

The legislature had no right to deny a village having the required population the right to adopt the commission form of government, or it had no right to so legislate as to place upon such village different and more burdensome requirements than those placed upon cities of the second class in the matter of getting the adoption of such government before the voters.

STEWART, C. J.—This is an original application for a writ of mandate. The application for the writ alleges that the plaintiff is a resident and taxpayer of Boise City, that a petition signed by a number of the qualified electors of Boise City equal to and in excess of 25% of the votes cast for all the candidates for mayor at the last preceding general election held in said city had been filed with the defendant mayor of Boise City, petitioning said mayor to call an election for the purpose of submitting the question of the adoption of the commission form of government, as provided for in an act adopted by the legislature of this state on the 13th day of March, 1911 (Sess. Laws 1911, p. 280); that more than ten days have elapsed since said petition was presented to said mayor, and that said mayor has failed and refused to call said election. Counsel for the defendant mayor has appeared and filed a demurrer to the complaint, and counsel *amicus curiae* has also appeared and filed a brief in support of the demurrer.

Two questions are presented by the demurrer. First: Can Boise City, being organized and now existing under a special

charter antedating the constitution of the state, come under the act of the legislature mentioned and set forth in plaintiff's application for a writ of mandate? Second: Is the title to the act set forth in plaintiff's application sufficient to constitute a constitutional enactment of said law and make it applicable to Boise City?

The portions of the act of March 13, 1911, which are important and involved in this case are as follows:

"Sec. 1. That any city within the State of Idaho, organized under the general laws of the State, or under special charter, or under a general incorporating Act, now or hereafter having, as shown by the last preceding state or national census, a population of two thousand five hundred persons, or over that number, may become organized as a city under the provisions of this Act by proceedings as hereinafter provided.

"Sec. 2. Upon petition of electors equal in number to twenty-five (25) per centum of the votes cast for all candidates for Mayor at the last preceding general city election of any such city, the Mayor shall, by proclamation, issued within ten (10) days after filing of such petitions, submit the question of organizing as a city under this Act at a special election to be held at a time specified therein, and within sixty (60) days after said petition is filed. If said plan is not adopted at the special election so called, the question of adopting said plan shall not be re-submitted to the voters of said city for adoption within two (2) years thereafter, and then the question to adopt may be re-submitted upon the presentation of a new petition signed by the electors of such city equal in number to twenty-five (25) per centum of the votes cast for all candidates for Mayor at the last preceding general city election. . . . .

"Sec. 3. All general laws of the State of Idaho governing or pertaining to such cities and not inconsistent with the provisions of this Act, shall apply to and govern cities organized under this Act; Provided: That no provisions of any special charter or other special Act or law which any such city may be operating under the time of its becoming organized under this Act shall thereafter be applicable to such city while

it is operating under the provisions of this Act. All by-laws, ordinances and resolutions lawfully passed and in force in such city under its former organization shall remain in full force until altered or repealed by the Council elected under the provisions of this act. The territorial limits of such city shall remain the same as under its former organization, but such territorial limits may be extended or changed as provided by law, and all rights and property of every description which are vested in any such city under its former organization shall vest in the same under the organization herein contemplated, and no right or liability, either in favor of or against it, existing at the time, and no suit or prosecution of any kind shall be affected by such change, and such city shall be the successor of the former organization and shall have perpetual succession; it shall have and exercise all powers, functions, rights and privileges, now or hereafter given or granted it, and shall be subject to all the duties, obligations, liabilities and limitations now or hereafter imposed upon such municipal corporations by the Constitution and laws of the State of Idaho, and shall have and exercise all other powers, functions, rights and privileges usually exercised by, or which are incidental to, or inhere in, such municipal incorporations of like character and degree.''

It is the contention of the defendant in this case that secs. 1 and 2 of the act of March 13, 1911, are in conflict with sec. 1, art. 12 of the constitution, and in the brief of counsel *amicus curiae* it is contended that said sections and also section 3 of said act violate sec. 19 of art. 3 of the constitution. We have also set out a portion of sec. 3 of the act in question for the reason that it seems to this court that such section is in a way involved in determining the questions presented upon this demurrer. Sec. 1, art. 12 of the constitution reads as follows:

''The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns in proportion to the population, which laws may be altered, amended, or repealed by the general laws. Cities and towns heretofore incorporated may become organized

under such general laws, whenever a majority of the electors at a general election, shall so determine, under such provision therefor as may be made by the legislature.''

Sec. 19, art. 3 of the constitution provides: ''The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:'' and then follow the enumerated cases in which local and special laws may not be enacted.

Referring now to sec. 1, art. 12, of the constitution quoted above, we find this section of the constitution grants power to the legislature of the state to provide by general laws for the incorporation, organization and classification of cities and towns in proportion to the population, and that such laws may be altered, amended or repealed by general laws, and that cities and towns incorporated prior to the adoption of the constitution may become organized under such general laws whenever a majority of the electors at a general election shall so determine under such provisions as may be provided by the legislature.

Boise City was organized as a municipality under a special charter from the legislature, approved January 11, 1866, while Idaho was a territory, and before the constitution was adopted. This special charter was recognized by the people in the provisions of the constitution when it was adopted, and it was specifically provided that cities and towns heretofore incorporated might become organized under the general laws whenever a majority of the electors at a general election should so determine, under such provisions therefor as may be made by the legislature. This special charter of Boise City has also been preserved and recognized by the legislature of the state by providing for amendments thereto by special acts made applicable to such city, and it would seem from the provisions of the act of March 13, 1911, that the legislature intended to enact a law whereby the electors of cities and towns incorporated under a special charter as recognized in the constitution might become organized under such general law. But it is the contention of counsel for the defendant that sec. 2 of the act in question, wherein it provides that the mayor

shall call an election and submit the question of organizing as a city under the act at a special election to be held at a time specified therein and within sixty days, is a violation of the provisions of sec. 1 of art. 12 of the constitution, because the act of the legislature provides that the change of the form of government from a special charter to an organization under the general laws shall only be determined at a general election. This involves the construction of the said section of the constitution as to what was intended by the makers of the constitution in incorporating in said section the words ''general election.'' It is contended by counsel for the mayor that ''general election'' as used in this section of the constitution was intended to mean a general election held under the general election laws of the state for the election of state and county officers; or if it did not mean a general election held under the general election laws of the state, that it must mean a general election held under the general election laws of the municipality, and in this instance the city of Boise, and that it does not include, and could not include, a special election called by the mayor at a time to be by him specified and within sixty days after the petition is filed. The term ''general election'' in state constitutions and in legislative enactments has been defined in various ways by the courts where such question has come before them for decision. The only use made of the words ''general election'' in the constitution other than found in sec. 1, art. 12 above referred to may be found in secs. 6 and 9 of art. 21 of the constitution. In sec. 6 provision is made for submitting to the qualified electors of the then territory, for adoption or rejection, the constitution, and after specifying the date at which such election shall be held, the section provides ''that the same shall be conducted in all respects in the same manner as provided by the laws of the territory for general elections,'' and in sec. 9 of said article 21, it is provided for holding the first state election after the constitution has been adopted and specifies: ''Said election shall be conducted in all respects in the same manner as provided by the laws of the territory for general election.'' The use made of the words

"general election" in these two sections of art. 21 indicates very clearly that such words are used with reference to general elections held for the purpose of electing state and county officers, and we think that the courts generally in construing the words "general election" have held that such words mean elections held for the purpose of electing state and county officers and members of Congress. (*People v. Town of Berkeley,* 102 Cal. 298, 36 Pac. 591, 23 L. R. A. 838; *State v. Cobb,* 2 Kan. 32; *Bond v. White,* 8 Kan. 333; *McIntyre v. Iliff,* 64 Kan. 747, 68 Pac. 633; *Westinghausen v. People,* 44 Mich. 265, 6 N. W. 641; *State v. Tausick* (Wash.), 116 Pac. 651.)

The legislature of the territory enacted a statute which was in force at the time the constitution was adopted, which provided for general elections and fixed a special date for holding the same. An examination of the authorities construing statutory and constitutional provisions which contain provisions relating to general elections shows that they reached the conclusion that general elections meant such elections as were held for state and county officers and members of Congress, and this same conclusion must also be drawn from the use of such words in the constitution of this state above referred to, and also in the statute. But in the use thus made of such words in constitutions and statutes, it generally clearly appears that such words have been used in such a way as to clearly indicate that general elections meant elections held for the purpose of electing state and county officers. But the words "general elections" as found in sec. 1, art. 12, of the constitution are not used in relation to the general subject of elections, but are intended to apply to such elections as may be provided by the legislature for the purpose of determining whether the electors of an incorporated city shall incorporate under the laws of the state, and the word "general" no doubt was intended to mean that it should be a popular election, or an election by the people, and should be open and available to all the electors, as distinguished from any special class, who were electors and qualified to vote in such incorporated cities and towns. There is no connection between the words "general election" as used in this sec-

tion with any other provision of the constitution, and no reference is made to any general law upon the subject of election, and nothing to indicate that the makers of the constitution had in view a general election for state and county officers. But we are inclined to the view that the makers of the constitution did have in contemplation that the election to be held should be provided for by proper legislation and should be held at such time and in such form and manner as would be provided by law. This election might be called a general election or it might be called a special election or it might be called a regular election, but it is to be an election to be held under a law to be enacted by the legislature. And it might be that the legislature might provide for the holding of such election at the same time that general elections are held, or the legislature might provide for holding it at a special time where the sole question to be voted upon at such election would be the question of organizing or changing the form of government from the form provided by the special charter to a form provided by the general law of the state.

In the case of *State v. Steunenberg*, 5 Ida. 1, 45 Pac. 462, the court had under consideration the above section of the constitution, and held that the election therein referred to was a general election held for the purpose of changing such form of government, and said:

"The latter part of said section of the constitution points out a means by which towns or villages which had been incorporated prior to the adoption of the constitution may become organized into cities under such general laws; that is, whenever a majority of the electors, at a general election held for that purpose, so indicate by their votes. . . . . I think the intention to so organize may be shown by complying with the provisions of said act passed in pursuance of said section by dividing the town into wards, and holding a general election of such town for the election of city officers and electing them, and also in complying with all of the provisions of said act. The electors may then show their intention by a majority vote to organize under the general law, and that is all that the constitution requires."

In the case of *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234, this court quotes with approval the language used in *State v. Steunenberg,* and in so doing changes the language used in the Steunenberg case from "at a general election thereof" to "at a legal election held therefor."

We do not understand that these two decisions were deciding the question as to whether the legislature had authority to pass a law providing for holding special elections to change the form of municipal government or the time of holding such elections, but were merely deciding that towns and villages which had been incorporated prior to the adoption of the constitution might become organized as cities under the general laws of the state by holding a general election for that purpose. The court did not define the term "general election" as used in the constitution, or hold that such words in any way referred to general elections, as defined by the statute.

In the case of *Boise City National Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93, this court expressly held that "under the provisions of sec. 1, art. 12 of the constitution it is provided that cities and towns theretofore incorporated may become organized under the general laws whenever the majority of the electors at a general election shall so determine, under such provisions therefor as may be made by the legislature." This clearly indicates that cities incorporated under special charters do not come under the general laws of the state until the majority of the electors of such city at a general election held for that purpose shall so determine. This case clearly recognizes that an election might be provided for by the legislature for changing the form of government of a city incorporated under a special charter into a city organized under the general laws by a vote of the majority of the electors of such city at a general election held for that purpose; that is, the election is a general election held for the purpose of determining whether the form of government shall be changed, and not that such election shall be a general election held under the general election laws of the state.

Had it not been the intention of the framers of the constitution to leave entirely to the legislature all formalities

as to holding such elections, there would have been no necessity for using in that part of said section the following language: "Under such provisions therefor as may be made by the legislature." This language clearly indicates to our mind that the election, and its name and the manner and time of holding, were delegated entirely to the legislative department.

The case of *State v. Tausick* (Wash.), 116 Pac. 651, decided by the supreme court of the state of Washington, is very much like the case now under consideration, and is cited by counsel on both sides as authority upon the question now under consideration. In that case the petition for an election requested that such election should be called at the time of the regular city election, and it was contended that "general election" as used in the constitution meant general state election. The constitution of the state of Washington in sec. 10, art. 11, provides: "Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine." While sec. 2 of the act involved in that case provided that the mayor should, upon a proper petition, by a proclamation submit the question of organizing as a city under such act to a special election to be held at a time specified therein and within sixty days after said petition is filed. In that case the court held: "Any election which is not regularly held for the election of officers, or for some other purpose which shall come before the electors at regular fixed intervals, is necessarily a special election. Had the act in question merely provided for an election on the question of adopting the commission form of government, it would have been a special election. Had it gone further and directed that a general election should be called, it would still be a special election. Manifestly the word 'special' is surplusage and can be disregarded without affecting the validity or meaning of the statute. Moreover, the word 'general' found in the constitutional provision quoted does not in fact make general the election therein mentioned and authorized. The framers of the constitution undoubtedly knew it would necessarily be a special election, whatever it might be called; their manifest ·

intention was not to require a general election on the subject itself, but to require that the result of such election should be determined not by a mere majority vote on the question but by the majority of the vote at a general election. Chapter 116 does not fix the time of holding the election further than to provide it shall be within sixty days from the filing of the petition. When, as in this case, the petition was filed within sixty days prior to a general election, it became the duty of the appellant and the trial court to call the election at such a time as would comply with the constitutional requirement.''

The main reasoning of that court for its conclusion we think is correct, but we do not indorse all that is there said with reference to the definition of ''general election,'' especially in view of the purpose and intent in which such words are used in our constitution. We are of the opinion that the framers of the constitution in using the words ''general election'' in sec. 1, art. 12, of the constitution, had in mind that an election should be held, and that it should be a general election in the sense that it should be an election at which the people having the qualification of electors should have a free and open opportunity of expressing themselves upon the question submitted, and that such qualification should not be limited by any special qualification, and that the legislature should make full provision for such election by legislative enactment, and that it was not the intention of the framers of the constitution that such election should be at a time of a general election under the general election laws of the state or the city, but was to be at such time and conducted in such form as should be provided by the legislature.

It is also contended that the special charter of Boise City cannot be amended by general law and that the act of March 13, 1911, is a general law and provides for the amendment of the special charter of Boise City. This question has been determined by this court in a number of instances, and this court has held that special charters of municipalities could only be amended by special acts of the legislature, and that general laws relating to purely municipal affairs of local concern to the government of cities did not apply to those cities

operating under special charters, without the consent of the electors of said municipality. (*Wiggin v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286; *Boise City National Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93; *Mix v. Board of Commissioners,* 18 Ida. 695, 112 Pac. 215.)

This rule of law we think is correct, and that a general law relating to municipal affairs of local concern to the government of cities cannot and does not amend or alter special charters under which cities have been organized prior to the adoption of the constitution. The act under consideration, however is a general law and relates to all cities in the state of a population of two thousand five hundred or over, and provides for the organization of such cities under the form of government provided for by said act; but the act itself in no way alters or amends either the general laws of the state in relation to cities and towns or villages, or cities organized under a special charter, but merely prescribes a new form of government which may be adopted by the sovereign power of cities. Under this act, if a majority vote at the election provided for by the act is in favor of adopting the new form of government, then elections are held and the machinery to carry out the provisions of the act is provided, and the people, the sovereign power of such cities, have suspended the charter under which the same were incorporated, and such cities have become organized under the provisions of said act, and the general laws of the state are made the charter of such cities. The constitution has expressly reserved to the people the right and power to make a change in the form of government where special charters have been issued to municipalities, and the legislature is permitted and authorized to prescribe the form and the method by which such change may take place. It is the people, the sovereign power of the municipality, who are given power by the constitution to make this change in the form of government, and it is not the legislature who are altering or changing the special charter. The legislature in enacting laws are simply acting under authority delegated to them by the people and can only enact such laws as have been authorized by the people, and where the sovereign power

has reserved the right to act upon any question, and the legislature have merely provided the manner or means by which such will may be expressed, and the people act and change the form of government, such alteration in the system of government in such instance is made by the people instead of the legislature.

That said act is general and not special and applies to all cities within the state having a population of two thousand five hundred or more, either organized under the general laws or a special charter, appears by the provisions made in sec. 3 of said act, as follows: "All general laws of the state of Idaho governing or pertaining to such cities and not inconsistent with the provisions of this act, shall apply to and govern cities organized under this act; provided, that no provision of any special charter or other special act or law which any such city may be operating under at the time of its becoming organized under this act shall thereafter be applicable to such city while it is operating under the provisions of this act." Under the provisions of this section, wherever a change of form of government is made from that under a special charter or from an organization under the general laws to the new form of government provided by the act of March 13, 1911, the provisions of said act are made to apply to all such cities making such change, and the act merely classifies the cities, and specifies the laws which the people may adopt governing such classification. (*Gillesby v. Board of Commrs.*, 17 Ida. 586, 107 Pac. 71.) This act of the legislature also provides that the same power authorized by the constitution to change the form of government from a special charter to an organization under the general law may also, after a period of six years, change from its organization under the general laws back to an organization under the special charter, and by such means the special charter will again become the law governing such municipality. There can be no question, it seems to us, but that under the constitution all power of government is vested in the people, and the people may make such changes in the form of government as they may deem wise and proper; and when the people of the state adopted

our constitution and reserved the right to the people, who constitute a municipality organized under a special charter, to change that form of government at a special election held for that purpose, and the legislature in carrying out that provision of the constitution have provided for the holding of such elections, such action of the legislature is clearly within the power of the legislature as conferred by the constitution.

It is next contended that the title of the act in question is unconstitutional because violative of sec. 16, art. 3 of the constitution, in that the title is not broad enough to embrace the subject matter contained in the body of the act. The title of the act reads as follows: "An act providing a form of government for cities of the state of Idaho now or hereafter having a population of two thousand five hundred or over, providing that any such city may become organized under the provisions of this act through the adoption thereof by special election, and providing the procedure therefor," etc. The objection to this title is that it does not specify cities organized under special charters. The title, however, says that it applies to a form of government for cities of the state of Idaho; this would seem to mean any and all cities within the state of Idaho, organized and existing under the general laws or special charters, having more than two thousand five hundred population. The words "cities of the state of Idaho" does not limit the act to cities organized under the general laws of the state, but includes all cities, whether organized under the general laws or under special charter. This court has, in a number of instances, passed upon the sufficiency of titles to various acts, and the rule of law adhered to has been that when a law has but one general object and such object is fairly indicated by the title, the title is sufficient and is not violative of any constitutional prohibition.

In the case of *State v. Doherty,* 3 Ida. 384, 29 Pac. 855, in discussing the sufficiency of a title to an act, this court held: "It is sufficient if the act treats of but one general subject, and that subject expressed in the title. To hold that each subdivision of the subject, and each and every of the

ends and means necessary for the accomplishment of the object of the act, must be specifically mentioned in the title, would greatly embarrass legislation, and accomplish no legitimate purpose." This case has been quoted by this court in a number of other Idaho cases, and in the case of *State v. Dolan*, 13 Ida., at p. 701, 92 Pac. 995, 14 L. R. A., N. S., 1259, this court quotes and approves the language of Judge Cooley in his work on Constitutional Limitations, 6th ed., pp. 171, 172, as follows: "If all parts of the act have a natural connection and reasonably relate, directly or indirectly, to one general, legitimate subject of legislation the act is not open to the objection of plurality of subjects." And the court in that case further says: "So far as this court is concerned, it has been determined that the title should indicate the general scope and purpose of the legislative enactment, and be so comprehensive as to give notice of such proposed legislation. The title should not be of such a character as to mislead or deceive, either the law-making body, or the public, as to the legislative intent. It should not cover legislation which is contradictory or not connected with or related to the general subject stated in the act. It should be broad enough to cover the subjects dealt with in the act, but not too broad, so as to indicate an intention to legislate upon a subject which the body of the act falls short of accomplishing, or departs therefrom." Examining the title now under consideration in the light of this rule of construction, it will be observed that the act in question is general in its application. It provides a form of government for cities of the state of Idaho having a population of 2,500 or more, and provides how such cities may become organized under the provisions of this act through the adoption by special election, and also provides for the holding of general and special municipal elections; provides for the powers and duties of officers under the act; provides for the recall of elective officials; provides for the initiation of legislation by the people and for the submission of measures and ordinances to a vote of the electors of cities adopting the same, and the procedure; provides for granting franchises and making contracts, and other functions, rights

and privileges usually exercised by cities of like character and degree; provides a method whereby any city adopting the provisions of the act may discontinue the same after a certain time; and provides that nothing in the act should be construed as repealing or modifying any existing general laws governing such cities, unless such general laws are inconsistent with the provisions of the act, and that the act should be construed as an additional and concurrent authority to the Political Code for such cities as may become organized under the act, and declaring an emergency. This title states the general subject to be treated by the act, to wit, a form of. government for cities, and thereafter specifies the particular measures and methods embraced within the act carrying out the general purpose and objects of the act. There is nothing in the title which could in any way have misled the legislature passing the same or which can mislead the people as to the intent and purpose of the legislature in enacting such law. Our attention has not been called to any contradictory legislation within its provisions or any subjects not connected with or related to the general subject stated in the act. It seems to be broad enough to cover all the subjects dealt with in the act, but is not too broad so as to indicate any intention to legislate upon a subject which the body of the act does not cover. The title of the act seems to be clearly within the rule announced by this court in *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.

Counsel *amicus curiae* has filed a brief in this case, and makes a very strong argument against the constitutionality of the act for the reason, as he contends, that it violates the provisions of sec. 1, art. 12, of the constitution, in that it provides for the organization and classification of cities within the state in violation of the provisions of the constitution; that is, that a classification is so made that it is not based upon population. It is claimed that the word "cities" as used in

sec. 1 does not include towns or villages, and limits the right to organize under this law to cities only organized under the general laws of the state or under special charters. Rev. Codes, sec. 2170, provides: "All cities, towns and villages containing more than one thousand and less than fifteen thousand inhabitants shall be cities of the second class, and be governed by the provisions of this chapter, unless they shall adopt a village government as hereinafter provided." And Rev. Codes, sec. 2222, provides: "Any town or village containing not less than two hundred nor more than one thousand inhabitants, now incorporated as a city, town or village, under the laws of this state, or that shall hereafter become organized pursuant to the provisions of this title, and any city of the second class which shall have adopted village government as provided by law, shall be a village, and shall have the rights, powers and immunities hereinafter granted, and none other, and shall be governed by the provisions of this chapter. . . . . "

From the provisions of these two sections of the statute counsel contends that municipal corporations having more than 200 and not more than 1,000 inhabitants, are villages, and that municipalities having more than 1,000 and less than 15,000 inhabitants are cities of the second class, and that a municipality having a population of 2,500 or over may be a city of the second class or a village, for the reason that sec. 2170 of the Rev. Codes above quoted gives authority for any city of the second class to organize as a village, while sec. 2222 recognizes the right of any village or any city of the second class which has adopted village government to continue its village organization, no matter what its size, the only penalty being that its rights, powers and immunities shall be limited to those granted to villages.

Counsel calls our attention to the case of *Carson v. City of Genesee,* 9 Ida. 244, 108 Am. St. 127, 74 Pac. 862, in which it was held that there could be no such thing as an involuntary incorporation, and that until the inhabitants of any territory make an application to become a city of the second class, no matter how numerous they might be, such organization for

such territory and such inhabitants cannot come into existence. Under the statute as thus construed, it is argued that if there be towns and villages having a population of more than 2,500 persons, such municipalities could not adopt the form of government as provided for by the act under consideration, because they are towns or villages and not cities; that a village having the required population desiring to adopt the form of government as provided for in the act would be required first to obtain the petition of a number of electors equal to three-fifths of the total vote cast at the last preceding election held in said village, for a change from the village form of government to that of a city of the second class; if the required number of electors could be obtained to unite in such petition, it would then be necessary for the board of village trustees to pass an ordinance declaring the said village to be a city of the second class, which resolution should be forwarded to the board of county commissioners of the county in which said village is located, and that this having been done, the board of trustees would have to divide the municipality into wards, and at the biennial election said city should elect its officers; but that the village could not become a city of the second class until these officers were elected and qualified; that the act under consideration, because of these various statutory provisions in the organization of towns and villages, prevents a village having the necessary population from adopting the proposed form of government.

It is claimed also that the act discriminates against villages; that a city of the second class may have an election for the purpose of voting on the proposition to adopt the proposed form of government upon a petition of a number of electors equal to one-fourth of all those voting for mayor at the last preceding biennial election, and can adopt the said new form of government upon the favorable vote of a majority of those voting at the election so called, but a village desiring to become a city of the second class for the purpose of being able to vote upon the adoption of such form of government, would have to have three-fifths of all the electors voting at the last preceding election in favor of that form of government, be-

cause that number must unite in a petition to change from a village government to that of a city of the second class; and that for a village to go through the process necessary to become organized under the new form of government, it would have to have three-fifths of the electors, while a city of the second class would only require a majority of those voting.

A similar question was considered by the supreme court of Washington in the case of *State v. Tausick* (Wash.), 116 Pac. 651, and while the precise difficulties which might seem to exist by reason of the classification of municipalities may not have been the same found in the Washington statute as are now urged against the statute now under consideration, yet the principle applied in that case may be applied to the case now under consideration. Sec. 1, art. 12, of the constitution provides that the legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns in proportion to the population, and sec. 3 of the act under consideration provides, "all general laws of the state of Idaho governing or pertaining to such cities and not inconsistent with the provisions of this act shall apply to and govern cities organized under this act." Under the constitution the legislature is clearly authorized to classify towns, cities and villages of the state according to the population, and while the legislature by general laws has made a classification of cities, towns and villages, this would not preclude or prevent the legislature in enacting the law now under consideration, and the reclassification of cities, towns and villages as cities, according to population as a prerequisite to adopting the form of government provided in the act now under consideration.

When the legislature provided by sec. 1 of the act that any city within the state of Idaho having a population of 2,500 persons might become organized as a city under the provisions of this act, it was the intention to include cities, towns or villages having a population of 2,500 persons, whether they had organized as cities and villages under the general laws of the state or had been designated as such by a special charter. In other words, the legislature intended to provide

a system of government which might be adopted for every municipality, whether it had been organized as a city or village, and fixed such classification according to population as provided by the constitution, at the number of 2,500. In the case of *State v. Tausick, supra,* the court has considered the questions which arise under the contention of counsel and say: "The mere fact that the constitution requires the classification of municipalities to be according to population does not further restrict the legislature as to the manner in which they shall be made or created. This constitutional provision is an authorization and not a limitation. It was undoubtedly adopted to avoid any contention that a classification according to population would be an arbitrary one. Many courts have held that an act general in its terms and operation, applicable to certain cities which may constitute a portion only of a class theretofore existing, creates a new classification in itself, and is valid as such." After quoting other authorities the court further holds: "If a new classification can thus be created within a single class previously created, we are unable to understand why a new classification may not also be created, as has been done by chapter 116, now under consideration, by including therein all cities of one class, and a portion of the cities of another—the next lower class. Our conclusion is that the law is not local, private or special; that it is general in its terms and application; that it is uniform in its operation throughout the state; that its classification is in no manner arbitrary; that it is valid and constitutional."

We are of the opinion that under the constitution the legislature had the authority to make a classification of the cities, and under the act in question it was the intent of the legislature to make the classification according to population, and that all cities, towns or villages having a population of 2,500 or more may become cities under the new form of government, while cities, towns or villages having less than 2,500 population must remain as such organizations under the general laws under which they have been organized, or where special charters have been issued, under such special charters; and that whether a city has been organized as a village or a city

under the general laws of the state or by special charter, such city or village may take upon itself the form of government as provided in the act, and the only qualification required is that such city or village shall have a population of 2,500 or more persons; and that a village organized under the general laws of the state is not required to pass through the process of becoming a city of the second class under the general laws of the state before it can petition for an election to form an organization under the act of March 13, 1911. This clearly was the intention of the legislature, and such power we think the constitution confers upon the legislature.

It may be observed that the act now under consideration presents many new questions relative to municipal government in this state; that provision is made by which the people, the sovereign authority within a municipality, may by direct ballot make and unmake the laws governing such municipalities, and by which they may change from a form of government formed under laws provided by the legislature, to a form and laws made by themselves. Before this court should hold that such a law is unconstitutional because of this decided change, or for any other reason appearing upon the face of the act now under consideration, we must find some good reason for so doing, and be satisfied that such statute is void beyond a reasonable doubt. In the case of *Doan v. Board of County Commrs.,* 3 Ida. 38, 26 Pac. 167, this court laid down the general rule which should guide it in determining the constitutionality of a statute as follows: "A strained construction of the constitution is not required nor permitted in order to work the repeal of statutes not clearly repugnant thereto. It is the duty of the court to give both to the statute and the constitution such construction as will give effect to both, unless the statute is so clearly repugnant to the constitution as to admit of no other reasonable construction."

In the case of *Sabin v. Curtis,* 3 Ida. 662, 32 Pac. 1130, the court again announces: "The conflict or repugnancy between the statute and the constitutional provisions must be clear, and so contrary to each other that they cannot be reconciled.

·Only when the court is clearly satisfied that such conflict exists will they declare a statute unconstitutional. In cases of doubt as to the constitutionality of a statute, the statute is sustained. Courts interfere only in cases of unquestioned violation of the constitution."

Later, in the case of *Gillesby v. Board of County Commrs.*, 17 Ida. 586, 107 Pac. 71, this court quotes with approval the language of Chief Justice Shaw in the *Wellington Case*, 16 Pick. (Mass.) 89, 26 Am. Dec. 631, as follows: "That when called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt."

We have made careful examination both of the constitution and the act involved in this case, and we have found nothing in the constitution which prohibits the legislature from enacting such a law. The wisdom or policy of such legislation is a matter entirely with the legislative department. With that the court has no concern, and in upholding this act we are guided by its provisions as they relate to the constitution. We find no provision of the constitution which prohibits such legislation.

The writ of mandate will therefore be allowed, and the mayor of Boise City is ordered and directed to issue forthwith a proclamation calling a special election as provided for and directed by sec. 2 of the act of March 13, 1911.

Costs awarded to plaintiff.

AILSHIE, J., Concurring.—I concur in the conclusion reached by the chief justice that a peremptory writ of mandate should issue.

1. In the first place, the act here under consideration is not an amendment to any previous legislation; on the contrary, it specifically declares that it does not intend to amend

any existing law. This act provides an alternative form of government for cities already organized and leaves it optional with the electors thereof as to whether they will avail themselves of its provisions. Special chartered cities are given the same opportunity as all other cities of accepting or rejecting the form of government therein prescribed, but no attempt is made by the act to amend any city charter.

2. I think the election provided for by the act is a general election within the meaning of the constitution. (Sec. 1, art. 12.) It seems to me that the word "general" as here used means unlimited or without special qualifications. (Standard Dictionary.) That is, an election in a special chartered city should be submitted to *all the electors* of the city, and should never be limited to taxpayers or heads of families or householders or *any class or set of electors*. This view is emphasized by noting that the requirement that the question shall be determined by a "majority of the electors at a general election" applies only to *"incorporated" cities changing* the form of their local government and does not apply to the *"incorporation"* of cities or villages. The incorporation may be accomplished under the provision of the constitution by electors having *special qualifications, such as taxpayers, householders or heads of families*. At the time of the adoption of the constitution, the statute (sec. 2224, Rev. Statutes of 1887) provided that a town or village might be incorporated upon petition of a *majority of the taxable male inhabitants* of such town or village within the territory proposed to be incorporated. The constitution did not attempt to change or abrogate this method of organizing a municipal corporation in the first instance, but did propose that before a city or town already incorporated should be taken out from under its special charter or the law under which it was then operating, the question should be submitted to *all the electors* of the municipality without qualification or limitation and thus be determined by the *general electorate* of the city or town. The law still provides (sec. 2222, Rev. Codes) for the incorporation of a town or village upon petition of "a majority of the taxable inhabitants" of such town or village.

3. I am not satisfied at this time to give my concurrence to the holding of the chief justice that the word "city" as it is used in sec. 1 of the act of March 13, 1911, was intended by the legislature to include villages. I doubt that proposition and reserve my judgment thereon. This would not, in my opinion, affect the constitutionality of the act, for the reason that the law already provides ample procedure whereby a village may become incorporated as a city. All cities as they now exist have had to go through with this procedure in order to pass from the state of a village to that of a city, and nothing more is required of a village now which may desire to adopt this new form of government. In other words, the general law now provides a method for the incorporation and organization of cities and towns in proportion to their population. This is in accordance with the constitution. This new law providing a commission form of government provides that all municipalities which have attained to the class of cities and have a population exceeding 2,500 may avail themselves of the provisions of the new act. This, it seems to me, is within the provisions of the constitution and would be a valid and constitutional classification.

For the foregoing reason, I concur in the judgment directing the issuance of the writ.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. Sec. 2 of said act, providing for a commission form of government for cities having a population of not less than 2,500, provides upon the presentation of a petition the mayor by proclamation must submit the question of organization under said act at a "special" election, etc. This contemplates a change from one form of government to another. Sec. 1 of art. 12 of the constitution, quoted in the majority opinion, authorizes the legislature by general laws to provide for the incorporation, organization and classification of cities and towns in proportion to the population, and provides that cities and towns theretofore incorporated may become organized under such general laws whenever a majority of the electors at a "gen-

eral election'' shall so determine. In the majority opinion it is held, in effect, that the words ''special election'' as used in said act mean the same and are synonymous with ''general election'' as used in said section of the constitution. I am unable to agree with that conclusion. The framers of the constitution no doubt had in mind and intended the words ''general election'' to have the meaning given them by sec. 465 of the Rev. Stat. of Idaho. Said section is as follows:

''There must be held throughout the territory, on the first Tuesday after the first Monday of November, in the year eighteen hundred and eighty-eight, and in every second year thereafter, an election, to be known as the general election.''

Sec. 466 of the Rev. Stat. provides that at such general election a delegate to Congress, members of the territorial legislature and county and precinct officers shall be elected. Since the adoption of the constitution the legislature adopted sec. 347, Rev. Codes, which is as follows:

''A general election shall be held in the several precincts in this state on the Tuesday succeeding the first Monday of November, A. D. 1910, and on the Tuesday succeeding the first Monday of November every alternate year thereafter.''

We find the term ''general election'' used in sections 347 to 353, inclusive, and in each section where that term is used it refers to the general state election held biennially on the first Tuesday succeeding the first Monday in November, when state, county and precinct officers are elected.

In *Doan v. Board etc.,* 3 Ida. 38, 26 Pac. 167, this court held that the term ''general election'' meant the election at which the state, county, district and precinct officers were elected. The term ''general election'' as used in the constitution and statutes of other states has been defined by courts of last resort. In *Westinghausen v. People,* 44 Mich. 265, 6 N. W. 641, the supreme court of that state said:

''It will be seen from all this that under the constitution there was only one election which was ever referred to as a general election, and that term was used as identical with the November election, which was previously annual, and thereby made biennial. That was the only election held simultane-

ously throughout all the state for officers to represent the whole state.''

*State v. Tausick* (Wash.), 116 Pac. 655, was a case almost identical with the one at bar. A writ of mandate had been issued to compel the mayor of Walla Walla to call an election in that city under a statute providing for a commission form of government similar to the statute involved in this case. The constitution of the state of Washington contains a provision similar to sec. 1 of art. 12 of our state constitution, and provides that cities and towns theretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine. The supreme court of that state held that the term ''general election'' as used in that constitution was an election in the city for the election of city officers, and the writ of mandate was authorized to issue commanding the mayor to call an election at said time. There the court held the term ''general election'' in said statute meant the general city election at which city officers were elected. Even under that decision, the writ ought not to issue in this case, as the application for the writ does not pray for the election to be held at the general city election, but that the mayor be compelled to call a ''special'' election at which only the one question involved in this case can be voted upon.

The term ''general election,'' when used in the statutes, refers to the election required to be held on the Tuesday succeeding the first Monday in November of each year. (See *State v. Cobb*, 2 Kan. 32; *Bond v. White*, 8 Kan. 333; *McIntyre v. Iliff*, 64 Kan. 747, 68 Pac. 633.) When the constitution commands how an act may be exercised, it prohibits the exercise of that right in some other way. The majority of the court are not satisfied with the meaning of the term ''general election'' as clearly indicated by the provision of our constitution and statute, but Chief Justice Stewart in his opinion has formulated the following unique definition of the term ''general election'': An election ''at which the people having the general qualifications of electors to vote should have a free and open opportunity of expressing themselves upon the ques-

tions submitted.'' Under that definition every special election provided for under our statute is a general election, for at all such special elections the voter has ''a free and open opportunity of expressing'' himself upon the question submitted. That definition does violence to the obvious and plain meaning of the term ''general election'' as used both in our state constitution and in our statutes. In case of a vacancy in this state of a member of the lower house of Congress, the governor, not having the power to fill the vacancy, is required to call a special election to fill the vacancy, at which election all qualified electors may vote and have a ''free and open opportunity'' to vote for whom they please, but that does not make such election a ''general election.'' A special election is one held to elect a single officer or to vote upon a single question, and such an election is not a general election. The time for holding general elections under our statute is provided for by statute, and the date for holding special elections is not provided for but fixed by the officer calling such special election as the law provides. It is not the ''free and open opportunity to vote'' that makes an election general, but it is an election at which the state, county, district and precinct officers are elected. Or, if it be applied to a city, the term ''general election'' refers to the biennial election to be held in April for the election of the mayor and other city officers.

Said act is repugnant to the provisions of said sec. 1, art. 12, for the reason that it provides that the question of the change in the form of city government shall be submitted to the qualified electors at a special election, and the provisions of said section of the constitution direct that such questions shall be submitted at a ''general election.''

Said act is also repugnant to the provisions of said section of the constitution for the reason that it fails to classify the cities and towns in proportion to the population and only applies to those municipal corporations that have adopted the city form of government and have a population exceeding 2,500; whereas under the provisions of sec. 2170, Rev. Codes, cities, towns and villages containing more than 1,000 and less

than 15,000 inhabitants are declared to be cities of the second class unless they shall adopt a village form of government as therein provided.   It will be observed that cities of the second class having a population of between 2,500 and 15,000 may be villages by adopting the village form of government. Where such cities of the second class adopt the village form of government, they are by name villages and do not come within the meaning of the word "city" as used in the statute. Thus under the provisions of said act only cities containing not less than 2,500 can organize under the commission form of government, and second class cities that have organized under the village form of government are not permitted to so organize.   Therefore said act does not classify the municipal corporations which come within its provisions in proportion to the population each contains, but does classify them by name in violation of the mandate of the constitution.

Chief Justice Stewart in the syllabus of his opinion states as follows, referring to the term "cities": "The legislature intended to make a classification according to the population, and that all cities, towns or villages having a population of 2,500 or more might be organized" under said act.   I fail to find the words "town or village" or their plurals mentioned in said act, and the learned judge who prepared that opinion thought it necessary to inject into said act the words "towns or villages" in order to save said act and make the classification required by the constitution.   Said act does not classify cities, towns and villages in proportion to the population, but simply by name, and is unconstitutional for that reason.

For the aforementioned reasons and for others which I shall not discuss here said act should be held unconstitutional and void.