(June 12, 1902.)

## WIGGIN v. CITY OF LEWISTON.
[69 Pac. 286.]

CHARTER OF CITY—MAY BE AMENDED.—A city may amend its charter by a legislative enactment. prescribing time and manner of conducting the elections in the city for city purposes.

CITY ELECTION—PROPERTY QUALIFICATION.—It may also prescribe a property qualification for all voters otherwise eligible to vote at any election creating an indebtedness against city.

SAME—PERCENTAGE OF PROPERTY AS BASIS OF BOND ISSUE—CONSTITUTION CONSTRUED.—An act of the legislature amending the charter of a city, providing that fifteen per cent of the entire property of the city, both personal and real, may be considered as the basis for issuing bonds for municipal improvements, wherein it is provided that bonds shall not be issued in excess of fifteen per cent of the taxable property as shown by the assessment of the preceding year, is a local or special law, but is not in conflict with the state constitution.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

Charles L. McDonald, for Appellant.

The state constitution provides, in article 8, section 3, that no city shall incur any indebtedness beyond its income without the assent of two-thirds of the qualified electors thereof. The term "qualified electors" is defined in article 6, section 2, of the constitution, and being a taxpayer is not made one of the qualifications of an elector. It thus appears that when the proposition to issue bonds was submitted to only such of the qualified electors as were taxpayers, the provision of the constitution that said questions should be submitted to all of the qualified

electors was not complied with. (Idaho Sess. Laws 1899, p. 53; Idaho Const., art. 6, sec. 2, art. 8, sec. 3.) Under the general election law of the state, no tax qualification is required. (Idaho Sess. Laws 1899, p. 45.) The act of the legislature of 1899, amending section 20 of the charter of the city of Lewiston, is unconstitutional, for the reason that it provides a special and local law for conducting elections and designating the place of voting. (Idaho Const., art. 3, sec. 19.) The act of the legislature approved March 6, 1899, provides for the holding and conducting of special elections therein provided, and by reason of said provisions, it contravenes the state constitution prohibiting the passage of special or local laws, providing for elections. (Idaho Const., art. 3, sec. 19; Idaho Sess. Laws 1899, pp. 39, 66.) Upon an examination of the act of the legislature, under which the elections were sought to be held, it will be seen that there are provisions relative to the assessment and collection of taxes, and the same being an act amending the charter of the city of Lewiston, is a special or local law, relative to the same. (Idaho Const., art. 3, sec. 19.)

S. L. McFarland, for Respondent.

The question raised is whether or not the act of March 6, 1899, amending section 20 of the charter of the city of Lewiston contravenes article 8, section 3, of the state constitution, in defining a qualified elector. (Act of the legislature, approved Feb. 2, 1899; act of March 6, 1899.) While we do not believe that either of the above-mentioned acts can be so construed as defining a qualified elector, or even if such a construction be placed on the acts, neither of them contravenes any provisions of the state constitution, for the reason that section 4 of article 6 of the state constitution provides that the legislature may prescribe the qualifications, limitations and conditions for the right of suffrage additional to those prescribed in said article. Section 20 of article 1 of the state constitution expressly provides that in all elections creating an indebtedness, a property qualification is required, and we apprehend that there is no question but that both of the elections shown by the record in this case were for the purpose of creating an indebtedness.

(Idaho Sess. Laws 1899, pp. 40, 593; Idaho Const., art. 1, sec. 20, art. 6, sec. 4.)    The special act of the legislature of Idaho territory (now state), incorporating the city of Lewiston, provides the manner of conducting elections within the city, and upon examination of the record in this case, it will be seen that the respondents followed the provisions of its charter in holding both of the elections. (Idaho Sess. Laws 1899, p. 593; Special and Local Laws of Idaho, secs. 559-669.)    Our constitution, in requiring a property qualification, does not specify the character of the property required, and we do not believe there is a single provision in our constitution which makes a distinction in the character of property that a person must own in order to entitle him to participate in an election where a property qualification is required.    The act of the legislature of March 6, 1899, expressly provides that the city can borrow money and issue therefor its negotiable coupon bonds not to exceed, at any time, in the aggregate, fifteen per cent of all the taxable property. (Idaho Const., art. 1, sec. 20; Idaho Sess. Laws 1899, p. 591.)

STOCKSLAGER, J.—This case comes here on appeal from an order of Hon. Edgar C. Steele, district judge of the second judicial district, made at chambers at Mt. Idaho, Idaho county, on the sixth day of May, 1902, refusing to grant a temporary injunction on application of plaintiff.

The complaint is a voluminous one, occupying folios 1 to 125, inclusive, in the record.    The statement of the case in the brief of appellant is conceded to be a fair one by counsel for respondent, and we adopt it as a correct statement of the case. This is an action brought by appellant, praying that the respondent be restrained from issuing or selling certain municipal coupon bonds of the city of Lewiston, and from purchasing or negotiating the purchase of the water system of the Lewiston Water and Light Company, John P. Vollmer, and Frank W. Kettenbach. The complaint alleges: That, among other things, the city of Lewiston is a municipal corporation, organized and existing under and by virtue of an act of the legislature of Idaho territory (now state), and that the above-named respond-

ents constitute the duly elected, qualified, and acting mayor and aldermen of said city of Lewiston; that the appellant is a resident taxpayer and qualified elector of the city of Lewiston; that on the seventh day of October, 1901, the common council of the city of Lewiston duly and regularly passed ordinance No. 322, which was an ordinance providing for the holding of a special election in the city of Lewiston, Nez Perces county, state of Idaho, for the purpose of submitting to the electors of said city the question of issuing municipal coupon bonds of said city of Lewiston, in the amount of $80,000, to be used for the purpose of erecting, constructing, operating, and maintaining a system of waterworks, to be the property of the city of Lewiston, Nez Perces county, Idaho; that said ordinance No. 322 was thereafter duly and regularly recorded in a book kept for that purpose, and authenticated by the signatures of the proper officers; that on the seventeenth day of October, under and by direction of the mayor and common council of the city of Lewiston, the city clerk of said city of Lewiston gave notice of the time, place, and manner of holding said special election; that said special election was held on the nineteenth day of November, 1901, from 12 o'clock M. till 6 o'clock P. M. of said day; and that in all the wards of said city there were two hundred and eighty-four votes cast, two hundred and thirty-four of which were in favor of issuing said bonds and fifty against the issuing of said bonds; that on the twenty-fifth day of November, 1901, the mayor and common council of the city of Lewiston met for the purpose of canvassing the votes of said special election, and did canvass the same; that on the twelfth day of December, 1901, the common council of the city of Lewiston passed a resolution directing the clerk of said city to publish a notice of said city's intention to issue negotiable city bonds and invite buyers therefor; that thereafter the city clerk of said city of Lewiston did publish a notice of said city's intention to sell said bonds; that thereafter the Lewiston Water and Light Company, a corporation, John P. Vollmer, and F. W. Kettenbach submitted a proposition to the city of Lewiston to sell to the said city of Lewiston the systems of waterworks owned by the said Lewiston Water and Light Company and said

· John P. Vollmer and Frank W. Kettenbach; that on the tenth day of March, 1902, the common council of the city of Lewiston duly and regularly passed an ordinance accepting the proposition made by the said Lewiston Water and Light Company, John P. Vollmer, and F. W. Kettenbach; that said ordinance was thereafter duly recorded in a book kept for that purpose, authenticated by the signatures of the proper officers, and was thereafter published in the "Lewiston Morning Tribune"; that said city of Lewiston has complied with the conditions mentioned in said ordinance, accepting the proposition of the Lewiston Water and Light Company, John P. Vollmer, and Frank W. Kettenbach, in so far as the repeal of the ordinance therein mentioned, the dismissal of said action, and the entering into the stipulation therein provided; that on the twelfth day of March, 1902, the common council of the said city of Lewiston duly and regularly passed ordinance No. 335, providing for the holding of a special election in the city of Lewiston, Idaho, for the purpose of submitting to the qualified electors of said city the question of authorizing the said city of Lewiston to purchase the system of waterworks and water plants of the said Lewiston Water and Light Company, and John P. Vollmer and Frank W. Kettenbach, and to pay therefor the sum of $70,000, which said sum is to be paid out of the proceeds of the sale of bonds heretofore authorized; that said ordinance was thereafter duly and regularly recorded in a book kept for that purpose, authenticated by the signatures of the proper officers, and published in the "Lewiston Morning Tribune"; that on the twenty-second day of March, 1902, in accordance with the terms and provisions of said ordinance No. 335, under and by direction of said mayor and common council of said city of Lewiston, the city clerk of said city posted and published notices of said special election; that on the twenty-fourth day of April, 1902, in accordance with the terms and provisions set out in said notices and ordinance No. 335, an election was held in said city of Lewiston, from 12 o'clock M. to 6 o'clock P. M., and that there were cast at said election, at all of the polling-places, one hundred and thirty-nine votes, one hundred and twenty-six of which were in favor of the purchase of said systems of water-

works, and thirteen against the purchase of said systems of waterworks; that on the twenty-ninth day of April, 1902, the mayor and common council of said city of Lewiston met for the purpose of canvassing the vote of said last special election, and did canvass the same; that neither of said special elections or notices of said special elections was legal or valid, for the reason that they specify and provide that the questions to be submitted were to be submitted to the qualified electors of said city, "who were taxpayers of said city"; that both of said ordinances and notices of election were in violation of the constitution of the state of Idaho, for the reason that they required the electors of said elections to be taxpayers; that no person was allowed to vote at either of said special elections unless he was a qualified elector and taxpayer of said city; that no elector, other than a taxpayer of said city, voted or was permitted to vote; that under the provisions of article 8, section 3, of the constitution of Idaho, any qualified elector of said city was entitled to vote; that the act under which said election was held is unconstitutional and void, and contravenes the terms and provisions of article 8, section 3, of the constitution of the state of Idaho; that said act is further null and void and unconstitutional for the reason that it contravenes the terms and provisions of article 3, section 19, of the constitution of Idaho, which provides that the legislature shall not pass local or special laws providing for, and conducting the elections, or designating the place of voting; that said elections were illegal and invalid for the reason that the common council of the said city of Lewiston did not follow or carry out the provisions of the act of the legislature of the state of Idaho entitled, "An act to provide for the issuance and sale of municipal coupon bonds, by incorporated cities and towns, for the application of funds derived from the sale thereof, and to provide for the payment of the principal and interest thereon," approved February 2, 1899, with reference to said elections, or either of them; that said elections were illegal and void for the reason that the polls were kept open only from 12 o'clock M. to 6 o'clock P. M., instead of the hours from 8 o'clock in the morning until 7 o'clock in the evening; that, in estimating the value of the tax-

able property, the common council of said city took into consideration both the personal and real property in said city, and that the sum of $80,000 exceeds in the aggregate fifteen per cent of the taxable real property in said city; that said first election was held for the purpose of constructing and maintaining a system of waterworks for the city of Lewiston; that the last special election was held for the purpose of obtaining authority to use $70,000 authorized at the first election, for the purpose of purchasing the water systems of the Lewiston Water and Light Company, John P. Vollmer, and F. W. Kettenbach, and that said city of Lewiston and common council of said city has no right or authority to purchase said system of waterworks with said funds or any part thereof; that the act of the legislature of the state of Idaho, under which said city of Lewiston called the first election, is unconstitutional, invalid and void, for the reason that it contravenes article 3, section 19, of the constitution of Idaho, which provides that the legislature shall not pass local or special laws for the assessment or collection of taxes, or for creating offices or prescribing the powers and duties of officers in counties, cities, townships, election districts, or school districts; that the notices of both the said special elections were illegal and unconstitutional, for the reason that they did not sufficiently set forth, specify, or describe the purposes of said elections, or either of them, or the manner or time and place of holding said elections, and did not designate the proper hours for the opening and closing of the polls; that said ordinance No. 322 was invalid and void for the reason that it did not sufficiently state the purpose of said election and did not comply with the provisions of said act of the legislature under which said elections were sought to be held; that said city of Lewiston and common council of said city have given out and threatened, and still give out and threaten, to sell $80,000 worth of said bonds voted at said special election, for the purpose of purchasing said systems of waterworks; that if said city of Lewiston sell said bonds to purchase said waterworks it will impose onerous and burdensome duties upon plaintiff and other taxpayers of said city; that said city will receive no title to said systems of waterworks, but will be indebted to the

amount of said $80,000; and that plaintiff has no plain, speedy, or adequate remedy in the premises in the ordinary course of law.

The first question presented to us is, Does the act of the legislature approved March 6, 1899, amending section 20 of the charter of the city of Lewiston, contravene article 8, section 3, of the constitution of the state? 2. Does the same act of the legislature contravene article 6, section 2, of the constitution in defining a qualified elector? 3. Does the same act contravene the state constitution and general election laws of the state in providing that an elector in voting at said special elections shall be a taxpayer of the city? 4. Is said act of the legislature a special or local law providing for and conducting elections, or designating the place of voting, and thereby contravening article 3, section 19, of the constitution? 5. Should the election have been held and conducted under the provisions of the act of the legislature of the state of Idaho approved February 2, 1899, which is an act providing for the issue and sale of municipal bonds by incorporated cities and towns, etc.? 6. Should not the polls have been kept open from 8 o'clock A. M. to 7 o'clock P. M., as provided for in the general election laws, instead of from 12 o'clock M. to 6 o'clock P. M.? 7. In estimating the taxable property of the city, should both real and personal property be considered or the real property only? 8. Can a portion of the money realized from the sale of bonds as authorized at the first election, which was for the purpose of constructing and maintaining a system of waterworks, be afterward used for the purpose of purchasing waterworks? 9. Is not the act of the legislature above referred to a special or local law providing for the assessment and collection of taxes for creating offices, prescribing the duties of officers in counties, cities, townships, election districts, and school districts, and thereby contravening article 3, section 19, of the constitution? 10. Did the ordinances and notices of the special elections comply with the terms and provisions of the act of the legislature under which said elections were sought to be held? 11. Is the act of March 6, 1899, and under which the question of bonding was submitted by the city, repealed by the act of February 2, 1899, mentioned

in the complaint? 12. Did the defendants comply with the said act of March 6, 1899, in calling the election and submitting the question to be voted upon?

The first, second, and third questions submitted to us relate to the qualification of a voter at a city election wherein and whereby it is to be determined whether or not the city shall create an indebtedness, issue bonds, etc.

The amendment to the charter of the city of Lewiston (section 20), as amended, provides: "If at said election, as provided for in this act, two-thirds of the qualified electors who are taxpayers in said city voting at said election assent to the issuing of said bonds, and the incurring of the indebtedness thereby created for the purposes aforesaid, said bonds for said purposes shall be issued in the manner hereinafter provided." It is earnestly and ably urged by counsel for appellant that this provision of the charter contravenes article 8, section 3, of the constitution. The provision in the constitution says: "No county, city, town, township, board of education or school district, or other subdivision of the state, shall incur any indebtedness or liability in any manner or for any purpose exceeding in that year the income and revenue provided for it for such year without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose." It will be observed that there is no property qualification in this provision of the constitution. But when we turn to section 20, article 1, we find the qualification of a voter to create an indebtedness had already been provided for. It says: "No property qualification shall ever be required for any person to vote or hold office except in school elections or elections creating an indebtedness." Our attention is also called to article 6, section 2, of the constitution by counsel for appellant. This section says: "Every male citizen of the United States twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he offers to vote thirty days next preceding the day of election," etc. This section only prescribes the qualification of a voter at a general election. Under the provisions of the constitution above cited, we think appellant's first, second, and third questions are fully answered by section 20, article

1, of the constitution, and adversely to him, but, if not, section 4, article 6, of the constitution, in prescribing the qualifications of voters says: "The legislature may prescribe qualifications, limitations and conditions for the right of suffrage additional to those prescribed in this article, but shall never annul any of the provisions in this article contained." This is sufficiently broad in its terms to empower the legislature to prescribe property qualifications in elections to create an indebtedness.

We are asked by question 4 whether the amendment to section 20 of the charter of Lewiston is local or special law. The portion of the amendment referred to reads: "Said election shall be conducted as other city elections," etc. It is urged that this amendment is in conflict with section 19, article 3, of the constitution, which says: "The legislature shall not pass local or special laws in any of the following cases." After enumerating a number of instances, such as the conduct of courts, etc., it says: "Providing for and conducting elections or designating the place of voting." We answer, yes; but an inspection of the proceedings of the city authorities in the conduct of the election to authorize the issue of the bonds declares that all of the provisions of the charter were complied with.

Questions 5 and 6 may be answered together. The act of February 2, 1899 provides that every city or town incorporated under the laws of the territory of Idaho, or of the state of Idaho, shall have power and authority to issue municipal coupon bonds not exceeding at any time in the aggregate fifteen per cent of the real estate value of said city or town, according to the assessment of the preceding year, etc. The same legislature, on the sixth day of March of the same year, in amending section 20 of the charter of the city of Lewiston, said: "Sec. 20. That said city of Lewiston shall have power and authority to borrow money and issue therefor its negotiable bonds with negotiable interest coupons attached not to exceed at any time in the aggregate fifteen per cent of the value of all taxable property in the said city as shown by the last preceding assessment-roll of said city." Although the act amending the city charter of Lewiston is local or special, yet the same is authorized by the provisions of sections 2 and 3 of article 11 of our constitution. It

is urged by counsel for appellant that this last provision is special or class legislation, and that the city was to be governed by the provisions of the act of February 2d. We think the two provisions of the statute above referred to should be construed in the light of sections 2 and 3 of article 11 of the constitution. Section 2 reads: "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created; provided, that any such general law shall be subject to future repeal or alteration by the legislature." Section 3: "The legislature may provide by law for altering, revoking or annulling any charter of incorporation existing and revocable at the time of the adoption of this constitution in such manner, however, that no injustice shall be done to the corporators." It must be borne in mind that the original charter of the city of Lewiston antedates the adoption of our state constitution, and was the result of a special act of the legislature. It seems from the record that all of the provisions of the charter of the city of Lewiston were complied with, in the conduct of the election, as to time and place and notification of voters.

We find nothing repugnant to any of the provisions of the constitution in the manner of voting upon the question of issuing bonds or the per cent as fixed by the act of March 6, 1899, being fifteen per cent of all taxable property in the city.

Question 7 is answered by our conclusions in 5 and 6; that is, it was within the power of the legislature to empower the city, by amending its charter, to take into consideration both personal and real estate, such act not being repugnant to any of the provisions of our constitution.

In answering question 8 we will say that, under the provisions of our constitution and the charter of the city of Lewiston as amended, we conclude that the city authorities of the city of Lewiston were authorized by a legal vote of the taxpayers to provide waterworks for the city, and to expend therefor the sum of $80,000 if necessary. We do not think it makes any

difference whether they construct a new system, or purchase, enlarge, and improve an old one, so long as the good faith of the officers of the city is shown by their acts; and that is not questioned in these proceedings.

Question 9 is answered by our conclusions in answer to 5 and 6.

In answer to question 10, we say that, so far as the record discloses, we say, yes. As to question 11, we answer no. The act of February 2, 1899, applies to cities and towns of the state not operating under the provisions of a special charter, and not to the city of Lewiston, as the charter of that city excepts it from the general provisions.

Our answer to question 12 is, yes; as far as we can gather from the record, there was a compliance with the provisions of the act of March 6, 1899.

In support of our conclusions reached, we desire to call attention to *Brown v. City of Denver*, 7 Colo. 305, 3 Pac. 455; *Carpenter v. People*, 8 Colo. 125, 5 Pac. 828. It will be found that the last case takes up a similar question to the one before us, and discusses it, as well as a great number of authorities bearing on the question.

The order of the trial court must be affirmed; costs to respondent.

Quarles, C. J., and Sullivan, J., concur.