(No. 6616. December 3, 1938.)

D. D. HOFFER and ETHEL HOFFER, His Wife, Respond-
ents, v. THE CITY OF LEWISTON, IDAHO, a Munici-
pal Corporation, Appellant.

[85 Pac. (2d) 238.]

John W. Cramer, for Appellant.

Butler & Madden, for Respondents.

AILSHIE, J.—This action was brought to recover damages against appellant city, resulting from its negligence in not repairing a defective condition of one of its sidewalks.

At the time of the trial respondent Ethel Hoffer had been a resident of the City of Lewiston for 36 years. September 17, 1935, she and her daughter left their home to walk down town from Normal Hill. They used the Sixth Street steps, "that being the nearest and most direct pedestrian way." This walk is constructed of concrete steps and slants or ramps from top to bottom, one of them being a very long ramp. About two-thirds of the way down the hill from the top of the steps, and right below the long ramp, respondent fell. In falling she "skinned both shins from her ankles to her knees," and sustained other injuries to her feet, knee, hip and back.

September 23, 1935, respondent wrote a letter to the members of the city council of Lewiston informing them of her accident and calling attention to the condition of the Sixth Street steps. The letter reads as follows:

"To the Mayor & Members of City Council.

"Want to inform you of the serious accident which I had, last Tues the 17th by falling, caused by a broken step on the Cement steps, going down 6th St.

"I came near breaking both legs, also injuring my back and right hip. Dr said I was lucky—scrious as it is, not to have broken both legs.

"I wish to inform you of the Condition of these steps, hope you will give this your earliest attention, to avoid future accidents to others using these steps, which are in constant use by many—

> "Yours Respectfully,
> "MRS. D. D. HOFFER
> "619—6th St.
> "Lewiston Ida."

September 7, 1937, claim for damages was filed with the mayor and city council by respondents, itemizing the amounts for medical service and other expenses in the sum of $5,499.50. September 17th following, complaint was filed in the lower court, seeking judgment for damages in the same amount. The cause was tried to the court and a jury and a verdict was returned for plaintiffs in the sum of $400. From judgment on the verdict defendant appeals.

Testimony in regard to the sidewalk in question may be briefly stated as follows: Mrs. Lequime had used the sidewalk for about ten years, for once a week at least; she recalled the crack in first step, an inch or two wide; there was no warning sign to indicate defect in walk. She believed walk should be repaired but "didn't think much about it."

Mr. Hoffer, husband of Ethel Hoffer, and one of respondents, used the walk twice a week. Walk was in broken condition at least a couple months before September, 1935. When asked if he considered it seriously dangerous at the time he replied: "Well, if I am honest with you, I never gave it a thought." Mr. Howe, another resident of the city, used the steps "some days four times a day." He didn't notice any serious defects in summer of 1935.

The city clerk testified to the construction of the steps, also about keeping informed as to condition of streets and action

taken on complaints from citizens. The city engineer's testimony related to the employment of ten men regularly on streets and sidewalks; that every month an inspection of the steps was made; that there were thousands of small defects all over town like those in the steps that they didn't figure of any consequence or hazard to the public; that he didn't remember any defects in 1935 that needed repair; that sidewalk was found to be in a condition safe for pedestrian traffic. The assistant city engineer, after receiving complaint from respondent, went over the steps with the assistant city foreman, Mr. Ruple, and the only defects they noticed were minor; that they were repaired; that they had never received any complaint as to the condition of the Sixth Street steps. Mr. Ruple testified that in making the inspection of the steps they didn't find anything that they ''considered bad.'' The general foreman of the city, Mr. Schenk, inspected the steps in the summer of 1935, either the last week in July or first of August, and found a defective condition in walk, about a ¼ or ½ inch. ''There was a check across the walk that would be a defect, otherwise not.''

Appellant assigns the action of the court in sustaining challenge to the juror Akins as error. When called to the jury box and examined, he stated he was a taxpayer of the City of Lewiston. Plaintiff's counsel thereupon challenged him under the provisions of subd. 8 of sec. 7–203, I. C. A. The challenge was resisted on the authority of sec. 227 of the Lewiston city charter (House Bill No. 121, 1907 Sess. Laws, p. 444), which provides as follows:

''Sec. 227. No person shall be an incompetent judge, justice, witness or juror by reason of his being an inhabitant or freeholder, or a taxpayer of the city of Lewiston, in any action or proceeding in which said city may be a party in interest, and all officers and employees of said city shall be exempt from jury service.''

The court sustained the challenge and excused the juryman apparently on the theory that subd. 8, sec. 7–203, which was adopted by the legislature of 1933 (1933 Sess. Laws, chap. 61) providing as follows:

"Challenges for cause may be taken on one or more of the following grounds: . . . .

"8. Being a taxpayer of any municipal corporation or *quasi*-municipal corporation which is a party to the action; . . . . "

had the effect of amending or repealing sec. 227 of the Lewiston charter. Neither the title to the 1933 act itself makes any reference to the Lewiston city charter nor does the act itself indicate any purpose or intention of amending the same.

The City of Lewiston is operating under a special charter. It was originally organized about January 15, 1863, under act of the Washington territorial legislature and prior to the passage of the act of Congress creating the territory of Idaho. (*Butler v. City of Lewiston,* 11 Ida. 393, 396, 83 Pac. 234; to same effect see *Howard v. Independent School Dist. No. 1,* 17 Ida. 537, 541, 106 Pac. 692.) Cities operating under special charters were recognized by special provisions of our constitution. (Sec. 2, art. 11, and sec. 1, art. 12; *Butler v. City of Lewiston, supra.*) The City of Lewiston has been a continuing municipal corporation since its organization in January, 1863. The legislature of 1907 (House Bill No. 121, Sess. Laws 1907, p. 349) passed a general amendatory act amending the charter and compiling previous amendments comprising a complete municipal charter for the city.

Boise City was organized by special territorial act long prior to the adoption of the constitution, and in *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692, this court considered the nature of such special charters and the bearing of the various provisions of the constitution upon such charters and said:

"It is also contended that the special charter of Boise City cannot be amended by general law and that the act of March 13, 1911, is a general law and provides for the amendment of the special charter of Boise City. This question has been determined by this court in a number of instances, and this court has held that special charters of municipalities could only be amended by special acts of the legislature, and that general laws relating to purely municipal

affairs of local concern to the government of cities did not apply to those cities operating under special charters, without the consent of the electors of said municipality. (*Wiggin v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286; *Boise City National Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93; *Mix v. Board of Commissioners,* 18 Ida. 695, 112 Pac. 215, 32 L. R. A., N. S., 534.)

"This rule of law we think is correct, and that a general law relating to municipal affairs of local concern to the government of cities cannot and does not amend or alter special charters under which cities have been organized prior to the adoption of the constitution."

"General acts do not ordinarily repeal the provisions of charters granted municipal corporations, unless such repeal is in express language or by necessary implication." (*Mayor etc. of Vicksburg v. Streckfus Steamers,* 167 Miss. 856, 150 So. 215, 217; 1 McQuillin on Municipal Corporations, 2d ed., pp. 436, 437.) As pointed out in *Kessler v. Fritchman, supra,* it would be inconsistent with the constitutional recognition of pre-existing chartered municipal corporations to hold that their charters may be automatically amended by general statutes. Such was the understanding of the legislature which amended the charter in 1907. They accordingly inserted sec. 233 therein which reads as follows:

"Sec. 233. No general law of the State or any amendment that may be made thereto, shall have the effect to repeal, alter or amend this charter or any of the provisions thereof, when inconsistent therewith, unless the act, enacting said laws, clearly expresses such intention by reference to said charter by title."

While it is true that this declaration,—that no future legislature should amend the charter "unless the act . . . . clearly expresses such intention by reference to said charter by title,"—could not circumscribe or control the action of a future legislature (if indeed the power exists), yet, as we interpret it, this section was simply a recognition of a rule of statutory construction which already existed. In fact the section last above quoted (sec. 233 of the charter) was contained in the charter of the City of Lewiston as the same was

amended by the territorial session of 1881 (Sess. Laws 1881, p. 390, sec. 23).

We conclude that the court erred in sustaining the challenge to the juror. We should add, however, that the action of the court was not prejudicial in this case as the city had no vested right to have any particular juror to try its case. (*State v. Hoagland*, 39 Ida. 405, 228 Pac. 314; *Faris v. Burroughs Adding Machine Co.*, 48 Ida. 310, 282 Pac. 72.)

It is next contended, and this is appellant's main reliance, that the evidence is insufficient to support the judgment. That respondent had a fall on one of appellant's streets is fully established as is also the fact that she sustained injuries. It is denied, however, by appellant that respondent's fall and resultant injuries were caused by an act of negligence of appellant or on account of any defective condition of appellant's sidewalk. After a very thorough study and analysis of the evidence before us, we are unable to discover any evidence by or on the part of respondent that she stepped in or caught her foot or shoe in the crack or tripped over it; or in any other way was the presence of the crack in the sidewalk or ramp the cause of her fall. Her testimony touching this question is as follows:

"Q. In descending the walk on that day did you have any particular experience?

"A. In descending it, yes, I did.

"Q. What was the experience?

"A. I had a fall.

"Q. Now, at about what point on this sidewalk did that fall occur?

"A. Well, I think it was about two-thirds of the way down from the top.

"Q. With respect to this long slope that you have described *where was the point of falling?*

"A. *Well, that was right below where I fell.*

"Q. The place where you fell—you fell *over a slope above the long slope?*

"A. *Yes, I did.*

"Q. The long slope, as you remember it, is *about two-thirds of the way down the hill?*

"A. About two-thirds of the way down; that would be my judgment.

"Q. Now, what was the *condition of the walk where you fell with respect to the condition of repair thereof at that time?*

"A. Well, the step was cracked I would say a foot or a foot and a half back from the end, the end of the ramp; and that crack was about from two to possibly two and one-half or three inches deep, and there was a slant where the step was cracked; it was slanting on the outside, and rough; quite rough. The edge of this crack was rough and seemingly to me a little higher than the back part of it.

"Q. How wide was that crack that you mentioned?

"A. I would say about two inches wide, or one and a half to two inches wide, as I remember it."

Her letter of notification to the mayor and council was no more specific, and besides it did not constitute evidence of negligence or the manner of the happening of the accident.

 This is not enough. In order to hold the city in damages for her injuries, there must be substantial evidence, direct or circumstantial, that the defective condition of the sidewalk was the direct and proximate cause of the fall. Possibilities are not enough to establish negligence; they must ascend into probabilities at least before they can support a verdict of negligence. (*Adams v. Bunker Hill etc. Co.*, 12 Ida. 637, 650, 89 Pac. 624, 11 L. R. A., N. S., 844; *Chicago, B. & Q. R. Co. v. Gelvin*, 238 Fed. 14, 23, L. R. A. 1917C, 983; *Lemos v. Madden*, 28 Wyo. 1, 200 Pac. 791, 793, quoting from *Stone v. Boston & A. R. R. Co.*, 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; 45 C. J., p. 913, sec. 482.) There might be an unguarded and unlighted opening across the sidewalk or an unprotected barrier across the street in an unlighted area and one have a fall or other accident in proximity thereto; and still there would be no municipal liability for the negligence, unless it be made to appear by sufficient substantial evidence that the barrier was the immediate cause of the injury. Many accidents occur without any visible or tangible reason. One may stumble and fall without knowing why or how it happened or because of physical indolence or

mental lethargy and inattention; but the mere proximity of such accidents to a defect in the street does not afford a basis for charging the accident to negligence of the municipality.

The judgment is reversed and a new trial will be granted. No costs awarded.

Holden, C. J., and Morgan, Budge and Givens, JJ., concur.