(No. 6672. September 28, 1939.)

STATE, Respondent, v. JESS DUNN, Appellant.

[94 Pac. (2d) 779.]

Eli A. Weston, for Appellant.

570

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

GIVENS, J.—Appellant was convicted of obtaining money by false pretenses under an indictment which charged the receipt and transmittal by appellant as agent for J. B. Stanfield, Inc., of Portland, of a contract for the sale of wool by one Carson to the company; it being alleged the contract was false and fictitious and that upon such contract appellant received $200 from the company.

Appellant contends it was prejudicial error to permit an amendment of the indictment changing it by alleging that appellant, as agent of said J. B. Stanfield Co. "received" the contract whereas the original indictment charged him with having "executed" it.

Minutes of the court show the amendment was granted October 31, 1938, at which time the court continued the trial of the cause until November 15, 1938.

Section 19–1320, I. C. A., is as follows:

"An indictment or information may be amended by the prosecuting attorney without leave of the court, at any time before the defendant pleads, and at any time thereafter, in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant. An information or indictment can not be amended so as to charge an offense other than that for which the defendant has been held to answer."

■ This section justified the court in allowing the amendment, because it is clear from the reading of the indictment[1]

---

[1] The charging part of the indictment, after the amendment, was as follows:

"That Jess Dunn, on or about the 11th day of June, 1938, at Boise, in the County of Ada, State of Idaho, then and there being did then and there, devising and intending by unlawful ways and means and by false and fraudulent pretenses and representations, to obtain and get into his custody and possession money of J. B. Stanfield, Inc., a Corporation of the State of Oregon, with the intent to cheat and de-

both before and after the amendment, appellant was charged with obtaining money under false pretenses on a fictitious contract of sale of wool by Carson to J. B. Stanfield, Inc., and that inferentially it was the intent of the grand jury to

fraud, and thereby then and there to cheat and defraud the said J. B. Stanfield, Inc., of the same, did then and there, wilfully, and unlawfully, knowingly, designedly, falsely and fraudulently, pretend and represent to the said J. B. Stanfield, Inc., that he, as agent of the said J. B. Stanfield, Inc., received a certain contract for the purchase of wool from one T. H. Carson, which contract is in the words and figures as follows: (Here follows the wool contract.)

"That upon the representation that said contract was valid and in full force and effect the said Jess Dunn did then and there execute a certain draft directed to said J. B. Stanfield, Inc., of Portland, Oregon in the sum of Two Hundred ($200.00) Dollars, the said J. B. Stanfield, Inc., then and there believing the said false and fraudulent pretenses and representations so made concerning the said contract as aforesaid by the said Jess Dunn, to be true, and being deceived thereby was induced by reason of the said false and fraudulent pretenses and representations made as aforesaid, to honor said draft and pay the sum of Two Hundred ($200.00) Dollars, lawful money of the United States, being then and there money of the said J. B. Stanfield, Inc., and the said Jess Dunn then and there by means of said false and fraudulent pretenses so made as aforesaid, did thereafter, wilfully, unlawfully, knowingly, designedly, and fraudulently, receive and obtain from the said J. B. Stanfield, Inc., the said moneys hereinbefore described and set forth, by presenting said draft for payment to the Boulevard Market of Boise, Idaho, which said draft was thereupon cashed and paid, and that the said Jess Dunn did thereafter, wilfully, unlawfully, and fraudulently, take, and carry away said moneys so obtained.

"Whereas in truth and in fact the said pretenses and representations, to-wit: The said contract with the said T. H. Carson, so made as aforesaid, was then and there in all respects utterly false and untrue and fraudulent and fictitious, whereas in truth and in fact there was no such person as said T. H. Carson as the said Jess Dunn well knew, and that the said contract was false, untrue, fraudulent and fictitious, and that said pretenses and representations so made by him as aforesaid were utterly false at the time of making them, and the said Jess Dunn then and there in a manner and by the means as aforesaid, did then and there, thereafter, wilfully, fraudulently, knowingly, and designedly, cheat and defraud the said J. B. Stanfield, Inc., of the said moneys hereinbefore described and set forth, all to the great damage of the said J. B. Stanfield, Inc."

charge the appellant with having personally prepared the fictitious contract. The amendment did not charge a new or different offense and it made no substantial difference as to the charge of obtaining money by false pretenses whether the indictment stated appellant *received* the fictitious contract or *executed* it, because the balance of the indictment both before and after the amendment impliedly charged appellant with having fabricated the contract. Furthermore, and in any event at the commencement of the trial appellant made no suggestion that he was prejudiced by the change either with regard to the offense charged or as to its being a new and different charge, nor is it shown that he was misled or in any way prejudiced by the amendment.

Section 1008 of the California Penal Code, which is almost identical with section 19–1320, I. C. A., had been construed by numerous cases prior to the enactment of section 19–1320, I. C. A., in 1929. In line with the great weight of authority (see annotations in 7 A. L. R. 1315 and 68 A. L. R. 928, 931) the California court has also consistently subsequently sustained the trial judge in permitting an amendment of the indictment in situations similar to the one presented herein. (*Chrisman v. Superior Court,* 59 Cal. App. 305, 210 Pac. 632; *People v. Anthony,* 20 Cal. App. 586, 129 Pac. 968; *People v. Bellamy,* 79 Cal. App. 160, 248 Pac. 1042; *People v. Bryant,* 101 Cal. App. 84, 281 Pac. 404; *People v. Schneider,* 107 Cal. App. 555, 290 Pac. 629; *People v. Cockrill,* 62 Cal. App. 22, 216 Pac. 78; *People v. Lowe,* 209 Cal. 199, 286 Pac. 697.)

It is contended the court erroneously excused three members of the grand jury after it had been impaneled, sworn and entered upon its duties, and improperly selected three others to fill their places, and that the indictment was therefore null and void.

The motion to set aside the indictment filed by appellant September 3, 1938, after conviction, alleges that one Ernest G. Day, a member of the grand jury was excused because of personal sickness; that Robert W. Baker, a member of the grand jury was excused "without legal cause" and that one Ralph McAdams, a member of the grand jury was

excused "without legal cause"; that there remained only 13 grand jurors and that the court called six prospective jurors, one of which, George A. Atkinson, was excused because upon challenge of the prosecuting attorney he was found to have been engaged in the business of writing bonds and that his office had written bonds for defendants who had been indicted by this grand jury. An affidavit by appellant personally, filed September 16, 1938, states that Ralph McAdams was excused for the reason he had lost one position (employment) because of long service on the grand jury and was offered another if he could be excused, and that Robert W. Baker was excused because he held a civil service position which he would loose if he continued to serve on the grand jury.

Section 19–903, I. C. A., provides:

"A challenge to an individual grand juror may be interposed for one or more of the following causes:

. . . . . . . . . . . . . .

"7. That a state of mind exists on his part in reference to the case, or to either party, which satisfies the court that he can not act impartially and without prejudice to the substantial rights of the party challenging."

Section 2–205, I. C. A., which is not limited in application but applies alike to grand jurors and trial jurors provides:

"A juror can not be excused by the court for slight or trivial cause, or for hardship, or inconvenience to his business, but only when material injury or destruction to his property, or that of the public intrusted to him is threatened, or when his own health or the sickness or death of a member of his family, requires his absence."

In *State v. Schieler*, 4 Ida. 120, 37 Pac. 272, it is said:

"The first assignment of error is the excusing of one F. C. Smith from the grand jury. It seems from the record that said Smith was not only a deputy sheriff of the county, and had been engaged in serving process in the case on trial, but he was a witness in the case. The excusing him from the grand jury was in the discretion of the court, and was entirely proper."

*State v. Guthrie*, 185 Wash. 464, 56 Pac. (2d) 160, was a case in which the court sustained the trial judge in ex-

cusing four of the seventeen prospective grand jurors who had been drawn and passed for cause, upon his own motion and without assignment of specific cause therefor. In considering Remington Revised Statute, sec. 2026, comparable to section 19–903, I. C. A., the court stated:

"While this section may be said to relate to challenges made by interested persons, it is not to be construed as denying the court the right, upon its own motion, to excuse a juror deemed to be disqualified or incompetent. To deny this right would be out of harmony with the policy of the law, which charges the court with the responsibility of insuring that qualified and impartial grand jurors are secured."

As in a trial jury a party litigant is not entitled to a particular grand juror, and a grand jury of sixteen did consider the indictment and appellant has shown no prejudice in this connection. (*State v. Conner*, 59 Ida. 695, 89 Pac. (2d) 197; *Hoffer v. City of Lewiston*, 59 Ida. 538, 85 Pac. (2d) 238; *Faris v. Burroughs Adding Machine Co.*, 48 Ida. 310, 282 Pac. 72.)

Appellant contends the trial court had no jurisdiction for the reason the contract was sent to the Stanfield Company at Portland and the draft on which the money was obtained was actually uttered in Oregon and that therefore the venue of the action was in Oregon, not in Ada county, Idaho. It appears from the evidence, however, that the sight draft was drawn by appellant in Ada county and was cashed by him at the Boulevard Market in Boise, Ada county, also the place from which the contract was sent.

The venue of a crime committed in part in the state of Idaho and in part elsewhere is, under sections 17–202 and 19–304, I. C. A., in any county in the state of Idaho in which a part of the crime is committed. The acts inaugurating and consummating the offense charged were in Ada county and the venue of the action was properly in said county. (*State v. Sheehan*, 33 Ida. 553, 196 Pac. 532; *State v. Stevens*, 48 Ida. 335, 282 Pac. 93.)

It is next contended it was prejudicial error to admit in evidence eleven other contracts all purportedly fictitious and made by appellant. The charge being the obtaining

of money under false pretenses involving intent the evidence of similar offenses by the same defendant, part of the same fraudulent scheme, was clearly admissible. (*State v. Stratford*, 55 Ida. 65, 37 Pac. (2d) 681.)

The evidence is ample to sustain the conviction and no prejudicial errors appearing in the record the judgment is affirmed.

Ailshie, C. J., and Morgan and Holden, JJ., concur.

Budge, J., did not sit at the hearing or participate in the opinion.

Petition for rehearing denied.