(No. 6936.   February 4, 1942)

FRED R. BAGLEY, city treasurer of Boise City, a municipal corporation, Appellant, v. MARGARET GILBERT, county treasurer and ex-officio tax collector for the county of Ada, Idaho, and ROY LEONARDSON, county assessor in and for the county of Ada, Idaho, Respondents.

(122 Pac. (2d) 227)

Rehearing denied March 2, 1942

C. Stanley Skiles, for Appellant.

Kenneth O'Leary, James W. Blaine, and M. Oliver Koelsch, for Respondents.

BUDGE, J.—Appellant, as City Treasurer of Boise City, commenced this proceeding praying for a Writ of Mandate to compel the Tax Collector and Assessor of Ada County to pay over to him, as City Treasurer, all monies collected by them on taxes levied by Boise City.

The affidavit for Writ of Mandate alleges that section 69 of the Boise City Charter provides that it shall be the duty of the Assessor and Tax Collector of Ada County to pay over to the Treasurer of Boise City all monies collected on city taxes "as fast as the same are collected"; that section 71 of Boise City Charter provides that Boise City shall pay to Ada County one-half of one per cent of the amount of taxes collected, which shall be in full payment for all services of the county in assessing, equalizing, and collecting the city taxes; that respondents have refused to pay over said monies as fast as the same are collected, and have retained one and one-half per cent of all such monies so collected.

Respondents answered the alternative Writ of Mandate, admitting all allegations of the affidavit for the Writ, and alleging that I. C. A., sec. 61-814, provides in part that all taxes collected for municipalities shall be paid to the County Treasurer and then apportioned to such municipalities; that one and one-half per cent of all city taxes so collected shall be retained by the County and then apportioned to the county current expense fund; that I. C. A., sec. 61-1901, provides in part that the provisions of that act (i.e., collection of taxes) shall apply to all cities, etc., and "other taxing districts organized under special laws of, or charters granted by, this state * * * *."

The trial court over-ruled a general demurrer directed to respondents' answer and on April 8, 1941, entered a judgment denying appellant's application for Writ of Mandate, from which judgment appellant appeals.

In 1866, Boise City received its original charter from the Territorial Legislature wherein it was provided that city taxes of Boise City should be levied by the Mayor

and Council, assessed by the City Assessor and collected by the City Collector. (Laws of Idaho, Third Session, sec. 5, p. 206; sec. 6, p. 207.)

The charter was amended in 1901 (1901 S. L., p. 109) wherein it was provided that the general taxes of Boise City should be assessed and collected by the Assessor and Tax Collector of Ada County; that the Council should determine the rate of taxes and certify the rate to the County Assessor; that the general taxes of the city should be extended upon the general roll by the County Assessor and collected by the Tax Collector; that Section 54, now section 69 of the Charter provides as heretofore stated, that the Assessor and Tax Collector must pay over to the Treasurer of Boise City all monies collected on city taxes as fast as the same are collected; that section 56 provided for the payment of one and one-half per cent of the amount of city taxes collected to the county to reimburse it for the services of its officers in assessing, collecting, equalizing and paying over said city taxes.

At the same session of the legislature (1901 S. L., p. 233), eight days subsequent to the amendment of the Boise City Charter as above referred to, a general statute was enacted providing that the assessment and collection of all general taxes by cities, towns, and districts within a county were transferred to the County Assessor; that said statute would become effective against cities and school districts operating under a special law or charter, "when any such special law or charter has been so amended by the legislature of the State of Idaho, as to authorize such cities * * to collect revenue under the provisions of this act"; that each county should retain a sum equal to one and one-half per cent of all city monies collected, in payment for services rendered by its officials.

In 1913, the Session Laws of 1901, p. 233, were amended wherein it was provided that the one and one-half per cent collection charge should be apportioned to the county current expense fund. (1913 S. L., p. 206, sec. 104.)

In 1923, the 1901 Session Laws, p. 233, were again amended by exempting independent and rural school districts from the payment of the one and one-half per cent collection charge. (1923 S. L., p. 96, ch. 84.)

The general act referred to, i.e., the 1901 act as amended, has been carried into the Code (I. C. A., secs. 61-814, 61-1901.). In addition to the foregoing general laws, I. C. A., sec. 61-804, provides that the county auditor must, on the second Monday of each month, transmit all city monies so collected to the Treasurer of such city.

We have set out the pertinent provisions of the Boise City Charter and of the general law for the purpose of pointing out that the only material conflict between the charter and the general law, prior to 1939, was as to the time the collected tax monies should be transmitted to the City Treasurer.

The legislature in 1939 amended section 71 of the Charter as follows:

"Boise City shall pay to said Ada County * * one-half of *one* per cent (.5%) on the amount of city taxes collected, and such payments shall be in full for the services and compensation of the County Assessor and Tax Collector, and all county officers, in assessing, collecting equalizing, and paying over said city taxes." (1939 S. L., p. 456, sec. 8, ch. 215.)

It will be observed that there are two conflicts between the charter as amended and the general law as referred to. First, the charter provides that Ada County shall pay over to Boise City all city tax monies as fast as the same are collected, whereas the general law provides that Ada County shall apportion the monies so collected once a month to the various tax units. Second, the charter as amended (1939 S. L., p. 456, sec. 8, ch. 215) provides that Boise City shall pay to Ada County *one-half of one per cent* of the amount of city taxes collected and such payments shall be in full for services rendered by the county officials, whereas the general law provides that the county shall retain *one and one-half per cent,* and apportion such sum to the county current expense fund.

It will be observed that neither the general act passed in 1901, eight days subsequent to the amendment of the Boise City Charter in 1901 (1901 S. L., p. 233), nor its amendment in 1913 (1913 S. L., p. 206, sec. 104), nor the act passed in 1923 (1923 S. L., p. 96, chap. 84), referred

to the Boise City Charter in the title or in the body of said general acts. In other words, the aforementioned acts were all general acts.

■ First, Article 3, section 16 of the Constitution provides that every act shall embrace but one subject and matters properly connected therewith which shall be expressed in the title. Since the aforementioned acts are general acts and the subject embraced in the various acts makes no reference to Boise City's Charter, to hold that said acts amended the charter of Boise City would violate the provisions of Article 3, section 16 of the Constitution.

■ Second, Boise City's Charter is subject to amendment only by a special act of the legislature specifically referring to the charter both in the title and in the body of the act. (*Hoffer v. Lewiston,* 59 Idaho 538, 85 Pac. 2d 238.)

■ The rule would seem to be well settled in this jurisdiction that the provisions of a special charter such as granted to the city of Boise supersede and prevail over any inconsistent provisions contained in the general law pertaining to matters of a local concern. (*Boise City Nat. Bank v. Boise City,* 15 Idaho 792, 100 Pac. 93; *Kessler v. Fritchman,* 21 Idaho 30, 119 Pac. 692; *Wiggin v. Lewiston,* 8 Idaho 527, 69 Pac. 286; *Butler v. Lewiston,* 11 Idaho 393, 83 Pac. 234; *Hoffer v. Lewiston, supra.; Berry v. McCormack,* 91 Okla. 211, 127 Pac. 392, 43 C. J. S. 153, p. 167; *Spaulding v. Desmond,* 188 Cal. 783, 207 Pac. 896; *Ferguson v. McDonald,* 66 Fla. 494, 64 So. 915.) The distinction between the two cases, *In Re Ridenbaugh,* 5 Idaho 371, 374, 49 Pac. 12, and *Boise City Nat. Bank v. Boise City, supra,* lay in the fact that by one act, the legislature declared the subject matter of the act to be one of state concern and declared a policy of the state with respect thereto which withdrew such subject matter from the province of local administration, and the other act merely related to local administration and delegated the determination of local questions to local authorities. When the legislature declares a matter to be of general state concern and declares a public policy with respect thereto, such general state law will prevail over any special city charter provisions to the contrary.

Before statehood the special charter cities had been set apart from the operation of the general law. The method of amendment by special act had become customary and traditional, and had already grown up and established a policy of non-interference on the part of the legislature with special charter cities, and the legislature was restricted to special acts in dealing with these cities.

The provisions of our Constitution pertinent to the above statement are as follows:

Article 21, section 2: "All laws now in force in the territory of Idaho which are not repugnant to this constitution shall remain in force until they expire by their own limitation or be altered by the legislature."

Article 12, section 1: "The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns, in proportion to the population, which laws may be altered, amended, or repealed by the general laws. Cities and towns heretofore incorporated, may become organized under such general laws, whenever a majority of the electors at a general election, shall so determine, under such provisions therefor as may be made by the legislature."

Article 12, section 1, supra, did not attempt to change or abrogate special charters of cities already incorporated, or to provide that said special charter cities should be taken out from under their special charters or the laws under which they were then operating, unless a majority of the electors at a general election should so determine without qualification or limitation. The latter part of the above section of the Constitution points out a means by which charter cities incorporated prior to the adoption of the Constitution may be organized into cities under general laws by a vote of the majority of the electors at an election held for that purpose. (*Kessler v. Fritchman, supra; S. V. Stunenberg,* 5 Idaho 1, 45 Pac. 462.) The legislature is not required however to submit acts amending special charters of cities to the electors of such cities prior to their going into effect. (*Butler v. Lewiston, supra.*) However special charters issued to cities by the Territorial Legislature prior to the adoption

of the Constitution can only be amended by special acts of the legislature. (*Kessler v. Fritchman.*)

Article 11, section 2, prohibiting the granting of special charters, provides that "No Charter of incorporation shall be granted. extended, changed or amended by special law, * * * * ", thus recognizing the existence of special charters already granted. It further provides that "the legislature shall provide by general law for the organization of corporations hereafter to be created: provided, that any such general law shall be subject to future repeal or alteration by the legislature."

Article 3, section 19: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: [Here follow specific prohibitions which do not include the amendment of charters of cities then existing.]."

A comparison of other Constitutions such as California adopted in 1879-80, Washington, Wyoming, and Montana, adopted at approximately the same time our Constitution was, indicates that all of them, except Idaho, contemplated the ultimate embodiment of the special charter cities into some general municipal system. It will be observed that the Idaho Constitution differs from the others heretofore mentioned in the following particulars.

First: The continuance of the special charter cities permanently as special charter cities is contemplated, and a means is provided for the modification of the charters from time to time by special law.

Second: The control of the cities in local affairs is made to depend wholly upon the medium of special acts amending the charters.

Third: There is no express power vested in the legislature to supersede, amend, or repeal any provisions of the charter by general laws.

It therefore follows we think that the omission of our Constitution to provide expressly that the legislature by general law may amend or supersede the charters of these cities must be regarded as made designedly.

It was held in *Boise City Nat. Bank v. Boise City, supra,* that "The special charter of Boise City is recognized and continued in force by the Constitution, and a method of

amending it by special laws is clearly contemplated by the constitution."

We are therefore not disposed to sustain the very able contention made by respondents which if true would result in holding that the amendment (1901 S. L., p. 109) is void and for that reason Boise City is governed by general law, and its special charter can be amended by general law with reference to matters of purely local concern; and thus obviate the rule long established, that special charters are subject to amendment only by special acts of the legislature.

We have concluded that the amendment to Boise City's Charter (1901 S. L., p. 109) is valid and not unconstitutional; that it can only be amended by special act; that Boise City is required to pay to Ada County for services of its officers in assessing, collecting, equalizing, and paying over said city taxes one-half of one per cent of the amount so collected "as fast as the same are collected"; that there is no inhibition in the Constitution or otherwise that would prohibit the legislature from transferring the duties of the collection of Boise City taxes and other duties, as provided for in the amendment of 1901 act heretofore referred to, from the city officials to the county officials. The county officials in collecting the Boise City taxes merely act as the agents of the city in the performance of the duties required of them.

While there is not a uniformity as to the amount the special charter cities and cities incorporated under the general law shall pay for the collection of their taxes and other duties to be performed by county officials, this situation can only be remedied by the legislature by a special act for that purpose.

From what has been said it follows that the judgment must be reversed and the cause remanded with instructions to the trial court to enter judgment for appellant. Costs to appellant.

Givens, C.J., Holden, and Ailshie, JJ., concur.

MORGAN, J., dissenting.—As I understand this case, it does not present a question of amendment of Boise City's special charter by a general law. It involves the question

of the amendment of the charter in violation of a general law.

As pointed out in the majority opinion, the original city charter was granted by the Territorial Legislature in 1866. It provided for the assessment and collection of taxes by city officials. In 1901 the state legislature amended the charter and provided therein that city taxes should be assessed and collected by the assessor and tax collector of Ada County. The 1901 amendment (1901 S. L., p. 130) contains the following:

"Section 56. Boise City shall pay to said Ada county 1½ per cent on the amount of city taxes collected, and such payments shall be in full for the services and compensation of the county assessor and tax collector, and all county officers in assessing, collecting, equalizing and paying over said city taxes."

Thereafter, and during that same session, the legislature enacted House Bill 190, a general law, which required county assessors and tax collectors to assess and collect taxes for cities. Section 8 of that act (1901 Sess. L., p. 238) requires a city to pay to the county in which it is situated one and one-half per cent on the amount of taxes collected for it which shall be compensation in full for all services rendered by county officers in assessing, equalizing, collecting and paying over said city taxes.

It is clear the intention of the 1901 legislature was that taxes for cities in Idaho, including Boise City, be assessed, equalized and collected by the county officials of the county in which such cities are situated, and that each said city, including Boise City, pay for such services to the county wherein it is situated, one and one-half per cent of the taxes so assessed, equalized and collected. The 1901 requirement that city taxes be assessed and collected by county officials and that one and one-half per cent of the taxes so collected be retained by the county, for the services of its officers in that behalf, is to be found in Idaho Code Annotated, § 61-814.

It will be seen from the foregoing that prior to and at the time of the enactment, by the 1939 Session of the Legislature, of § 71 of the Boise City charter so as to require the city to pay to Ada County one-half of one per

cent of the amount of city taxes collected, as compensation for the services of county officers in assessing, equalizing, collecting and paying over city taxes, § 61-814 was in force. It provides:

"All taxes of every city, * * * levied according to law and certified in accordance with the provisions of this act, shall be collected and paid into the county treasury and apportioned to such city * * * ; provided, that one and one-half per cent of all taxes collected and paid into the county treasury for every incorporated city, * * * shall be apportioned to the county current expense fund, which apportionment shall be in full for all services of all county officers in the levy, computation and collection of such taxes. * * * "

Pursuant to that section, and until the enactment by the legislature in 1939 of the act reducing the charge to one-half of one per cent of the taxes collected, the city had been paying to the county one and one-half per cent of such taxes for such services, and the 1939 act was an attempt to so amend the charter as to reduce the charge from one and one-half per cent of the taxes collected to one-half per cent thereof.

Counsel for respondents are right in their contention that the 1939 act of the legislature, wherein it is attempted to amend Boise City's charter so as to provide for the collection by Ada County of one-half of one per cent of city taxes collected, instead of one and one-half per cent thereof, for the services of its officers rendered in assessing, equalizing, collecting and paying over such taxes, is in violation of Article III, § 19, of the Constitution of Idaho, which provides:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * For the assessment and collection of taxes. * * * Creating offices or prescribing the powers and duties of officers in counties, cities, townships, election districts, or school districts, except as in this constitution otherwise provided. * * * "